IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| THOMAS E. PEREZ, Secretary of Labor | § | |
| United States Department of Labor | § | |
|     Plaintiff | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 4:14-CV-997-O |
| DALLAS-FORT WORTH DOMICILE, | § | |
| ALLIED PILOTS ASSOCIATION, | § | |
| and | § | |
| ALLIED PILOTS ASSOCIATION, | § | |
| NATIONAL HEADQUARTERS, | § | |
|     DEFENDANTS | § | |

---

## AFFIDAVIT OF THOMAS W. WESTBROOK

---

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF DALLAS | § |

BEFORE ME, the undersigned authority, on this day personally appeared THOMAS W. WESTBROOK, who, being by me duly sworn, on oath stated:

1.    "My name is THOMAS W. WESTBROOK. I am at least twenty-one years of age, of sound mind, capable of making this Affidavit, and fully competent to testify to the matters stated herein. I have personal knowledge of all of the facts stated herein, each of which are true and correct.

2.    "I am the Chairman of the Dallas-Fort Worth Domicile of the Allied Pilots Association, one of the named defendants in this case ("DFW APA"). In addition, I also serve on the Board of Directors of National Headquarters of the Allied Pilots Association, the other named defendant in this case ("APA").

3.    "I have been a member of both the DFW APA and APA since 1986. In 2001, according to the minutes of the fall meeting of the Board of Directors of APA (the "2001 Fall BOD

Minutes"), APA passed Resolution R2001-86, APA Structural Changes, which instituted a structural change which clarified that each of the local domiciles of the APA were separate local labor organizations, allowing the APA to take advantage of certain options, one of which was allowing the APA to dictate the dues to all of the separate local labor organizations rather than the dues being set by referendum vote (the "Structural Change Resolution"). A true and correct copy of the relevant excerpts from the 2001 Fall BOD Minutes and the Structural Change Resolution are attached hereto as *Exhibits "1"* and *"2"*, respectively.  The Structural Change Resolution further required that APA's legal counsel advise the Department of Labor that the APA considers each of its domiciles to be local labor organizations under the Labor-Management Reporting and Disclosures Act (the "LMRDA").

4.      "Pursuant to the Structural Change Resolution, as a local labor organization DFW APA files Form LM-3, Labor Organization Annual Report ("LM-3"). As Chairman of the DFW APA since 2014, I have completed, signed and submitted the LM-3s for DFW APA.  A true and correct copy of the DFW APA LM-3 for 2015 is attached hereto as *Exhibit "3."*

5.      "Upon being elected, I commenced the internal procedures for an election appeal with the APA by letter of April 15, 2014 (the "DFW Domicile Officer Election Complaint"). Once the Appeal Board of APA made its final decision via email on June 13, 2014, I was forced to file an administrative complaint with the Department of Labor (the "DOL Administrative Complaint") to pursue the violations and obtain a resolution so that future elections would be held in accordance with the law.

6.      "During the pendency of the Department of Labor's investigation, but prior to their filing suit, I attempted to communicate with APA regarding DFW APA's interest in the pending matter.  Neither I nor my other director of DFW APA was consulted at any time after the filing of

DFW Domicile Officer Election Complaint or the DOL Administrative Complaint.

7.     "I did not receive any prior notice of a meeting on November 21, 2014, with the Department of Labor thereby preventing any representative of the affected domicile, DFW APA, from being in attendance at such meeting. Interestingly, however, notice was provided to the owner of BallotPoint Systems, Inc. (CCC Complete, Inc.), who the APA admitted was in attendance at the meeting. I was only provided a memorandum of the meeting on November 24, 2014, well after the meeting occurred.

8.     "In addition, a settlement offer was tendered by APA on behalf of both APA and DFW APA on November 24, 2014, without consulting or seeking the consent of DFW APA. Such offer was rejected by the Department of Labor on November 26, 2014, of which I did not receive notice until December 9, 2014. Thereafter, this lawsuit was filed on December 12, 2014.

9.     "Except for general disclosure that settlement discussions were ongoing, I received no specific information regarding the proposed settlement terms or the status of the DOL Administrative Complaint and/or lawsuit against DFW APA from December, 2014, through September, 2015. In September, 2015, I requested a copy of information related to the DOL Administrative Complaint from the Secretary-Treasurer of APA and was provided a copy of a proposed settlement agreement on September 11, 2015. DFW APA did not even know this proposal had been made and has not received any documents or information that may have been exchanged in the interim. The proposal was dated September 3, 2015.

10.    "On September 20, 2015, in light of the clear circumvention of DFW APA in the lawsuit, I sent an email to the President of APA, Captain Wilson, requesting independent counsel for DFW APA. A true and correct copy of the Independent Counsel Email is attached hereto as *Exhibit "4."* Interestingly, in 2000, the APA actually passed a Resolution in October of 2000 noting

---

the imperative nature for the legislative body of any organization to have legal services that offer independent opinions ("Independent Legal Services Resolution"). A true and correct copy of the Independent Legal Services Resolution is attached hereto as *Exhibit "5."*

11.     "President Wilson did not respond to the substance of my Independent Counsel Email for almost two weeks. In that interim period, I began to research this case independently and reviewed the Docket, Complaint, Summons and Answer filed on behalf of DFW APA without any input or communication with DFW APA from its counsel, Sanford Denison.

12.     On October 3, 2015, I had a detailed conversation with President Wilson regarding DFW APA's concerns with the proposed settlement I had received on September 11, 2015, and the Independent Counsel Email. During this conversation, I notified President Wilson that DFW APA did not consent to the proposed settlement agreement. I was then directed to contact Steve Hoffman, APA's General Counsel.

13.     On October 8, 2015, I spoke with APA's General Counsel who took the position that I could not be involved in the settlement negotiations because my interests, as the claimant, were not aligned with APA or DFW APA and suggested that the Vice Chair of DFW APA, John Wales, be involved in the settlement negotiations. A true and correct copy of the General Counsel Email is attached hereto as *Exhibit "6."*

14.     "I informed Vice Chair Wales of my conversations with President Wilson and General Counsel and he agreed to talk to President Wilson.

15.     "On Saturday, October 31, 2015, I received an email from the Secretary-Treasurer of the APA with the signed Stipulation of Settlement. On the first business day after receipt of the Stipulation of Settlement, November 2, 2015, I spoke with DFW APA's counsel of record and expressed with absolute clarity that DFW APA was not in agreement with the proposed settlement

agreement and that was not to sign on behalf of DFW APA.  Mr. Denison simply stated that he would only take steps as directed by the General Counsel for APA and indicated that the consent, consultation and input of DFW APA in this proposed Consent Decree was of no import.

16.     "DFW APA has a right under the APA Policy Manual to conduct an election by paper ballot if the APA Board of Directors passes a resolution to such effect.  By resolution 2014-61 presented by the Miami Domicile on January 2, 2015, the APA Board of Directors sought to amend APA Policy to require paper balloting in all local and national elections.  Upon advice of the general counsel, the resolution was tabled pending the negotiation of this stipulation of settlement. The proposed settlement not only strips away the right for paper balloting, but also subjects the votes and members of the DFW APA to an experiment for the benefit of BallotPoint Systems, Inc. and CCComplete, Inc. at the expense of the integrity of the elections of DFW APA, which could be preserved by simply utilizing paper ballots.

17.     "DFW APA has not consented to the Agreed Motion for Entry of Consent Decree, the Stipulation of Settlement or proposed Consent Decree and objects to the entry of the same. Moreover, prior to the Agreed Motion for Entry of Consent Decree being filed with this Court, I told James Hoffman, Sanford Denison and President Wilson that DFW APA was not in agreement, but the Motion was still filed indicating our agreement."

FURTHER, AFFIANT SAITH NOT.

SIGNED this  9th  day of November, 2015.

_____
THOMAS W. WESTBROOK

SWORN AND SUBSCRIBED TO by THOMAS W. WESTBROOK this the  9th  day of November, 2015.

CANDACE C. FREEMAN
Notary Public, State of Texas
My Commission Expires
July 08, 2018
(Seal)

_____
Notary Public, State of Texas

## Notice to all APA Members from the Secretary-Treasurer

Listed below are the changes to your Policy Manual during the October 22-28, 2001 and November 6-8, 2001 Board of Directors Meeting.   If you have questions, concerns, or objections after reviewing these minutes, I recommend you first contact your local domicile representatives and get their views.

You also have rights outlined in the APA Constitution, Article II, § 4. Copies of the APA Constitution and Bylaws and the APA Policy Manual may be obtained from the Secretary-Treasurer.   You may also access the Constitution and Bylaws on the APA Web Site at www.AlliedPilots.org/mbr/doc/constitution.pdf; the Policy Manual at www.AlliedPilots.org/mbr/doc/pol.man.pdf

Changes to the Policy Manual were effective on the last day of the Board of Directors meeting, November 8, 2001, and current revisions of that document are now available.



First Officer John G. Bury
Secretary-Treasurer



## Changes to the Policy Manual
### As Approved at the Fall 2001 Board of Directors Meeting October 22-28, 2001
### and November 6-8, 2001

| SECTION | ACTION | CONTENT |
|---|---|---|
| 1.02a | Amend | R2001- 82   Board Meeting – Domicile Issues Discussion |
| 1.02a D. & E. | Amend | R2001-115  Board Meeting Session Duration |
| 1.02a F. | Addition | R2001-115  Board Meeting Session Duration |
| 1.21 | Addition | R2001-78<br>Electronic Distribution of Documents (General) |
| 2.20 | Amend | R2001-79, Rev. 1<br>Electronic Distribution of Meeting Minutes |
| 4.01.B.3 | Addition | R2001-111<br>Radiation and Environmental Issues Sub-Committee |
| 4.01.B.10 | Amend | R2001-113  National Membership/Furlough Committee |
| 4.01B.30 | Addition | R2001-109  Committee for Armed Defense of the Cockpit |
| 4.01.B.31 | Addition | R2001-119  International Alliance Committee |
| 13.01 & 13.02 | Deletion | R2001-85    Credit Union Support & Logo |

Effective date of these changes: November 8, 2001; Revision #100

# TABLE OF CONTENTS

CHANGES TO THE POLICY MANUAL ........................................................................................................ 2

TUESDAY, OCTOBER 23, 2001 ............................................................................................................... 5

   OPENING INVOCATION ............................................................................................................................ 5
   ROLL CALL ............................................................................................................................................. 5
   PRESIDENT'S REPORT ............................................................................................................................. 7
   WORKING RULES/PARLIAMENTARIAN PROCEDURES ............................................................................. 8
   AAMERICANS UNITED FLAG ACROSS AMERICA ..................................................................................... 8
   SECRETARY-TREASURER'S REPORT ....................................................................................................... 9
   PILOT MUTUAL AID ............................................................................................................................... 13
   MERGERS AND ACQUISITIONS COMMITTEE AD HOC .............................................................................. 14

WEDNESDAY, OCTOBER 24, 2001 ........................................................................................................ 15

   LEGISLATIVE AFFAIRS .......................................................................................................................... 15
   FINANCIAL REPORT .............................................................................................................................. 15
   AEROMEDICAL/AMAS ......................................................................................................................... 18
   PENSION COMMITTEE ........................................................................................................................... 21
   BENEFIT REVIEW AND APPEAL BOARD ................................................................................................. 25
   APPEAL BOARD .................................................................................................................................... 25
   JUMPSEAT/NON-REV COMMITTEE ........................................................................................................ 26
   CONTRACT COMPLIANCE COMMITTEE .................................................................................................. 27

THURSDAY, OCTOBER 25, 2001 ............................................................................................................ 28

   APA BENEFITS REPORT ........................................................................................................................ 28
   COMMUNICATIONS ............................................................................................................................... 32
   STRIKE PREPAREDNESS COMMITTEE ..................................................................................................... 35
   MEMBERSHIP/FURLOUGH COMMITTEE .................................................................................................. 37
   INTERNATIONAL PILOT LIAISON GROUP ............................................................................................... 38
   INFORMATION TECHNOLOGY COMMITTEE ............................................................................................ 41

FRIDAY, OCTOBER 26, 2001 ................................................................................................................. 42

   TECHNICAL ANALYSIS & SCHEDULING COMMITTEE ............................................................................. 42
   CHECK AIRMAN COMMITTEE ................................................................................................................ 45
   CAPTAIN'S AUTHORITY COMMITTEE ..................................................................................................... 47
   DEDICATION OF LYONS' DEN ............................................................................................................... 48
   GENERAL COUNSEL .............................................................................................................................. 48
   SAFETY AND TRAINING COMMITTEE ..................................................................................................... 48
   ESOP ................................................................................................................................................... 51

SATURDAY, OCTOBER 27, 2001 ............................................................................................................ 53

   FLIGHT TIME/DUTY TIME ...................................................................................................................... 53
   SCOPE COMMITTEE .............................................................................................................................. 56
   FINANCIAL AUDIT COMMITTEE ............................................................................................................. 57
   FAC ELECTION ..................................................................................................................................... 58
   AD HOC COMMITTEES REVIEW ............................................................................................................. 59
   TASC ELECTION ................................................................................................................................... 59
   NATIONAL COMMITTEE RECOMMENDATION LIST .................................................................................. 59
   NATIONAL COMMITTEE APPOINTMENT AFFIRMATION ........................................................................... 60
   NATIONAL OFFICERS' COMPENSATION .................................................................................................. 61
   STRATEGIC PLANNING COMMITTEE ...................................................................................................... 61

ACTIONS TAKEN ON PREVIOUS RESOLUTIONS ............................................................................................... 61
APA LEGAL DEPARTMENT – ARCHIVING PROJECT................................................................................. 61
SYSTEM BOARD/GRIEVANCE REPORT ................................................................................................... 65
EXECUTIVE SEARCH COMMITTEE........................................................................................................... 66
SCHOLARSHIP COMMITTEE..................................................................................................................... 67

**SUNDAY, OCTOBER 28, 2001** ............................................................................................................... **68**

CAPA ........................................................................................................................................................ 68
NEGOTIATING COMMITTEE....................................................................................................................... 68
NEGOTIATING COMMITTEE ELECTION ..................................................................................................... 70
CONTRACT COMPLIANCE COMMITTEE ELECTION ................................................................................... 71
SCOPE COMMITTEE ELECTION ................................................................................................................ 72

**TUESDAY, NOVEMBER 6, 2001** .............................................................................................................. **74**

ROLL CALL ............................................................................................................................................. 74
PRESIDENT'S REMARKS........................................................................................................................... 75
CADC MEETINGS..................................................................................................................................... 75

**WEDNESDAY, NOVEMBER 7, 2001**........................................................................................................ **77**

MOTION TO APPROVE SUPPLEMENT CC ................................................................................................. 77

**THURSDAY, NOVEMBER 8, 2001** .......................................................................................................... **79**

MEDICAL/SENIORITY EXCEPTION ............................................................................................................ 79
FINANCIAL/BUDGET RECOMMENDATIONS............................................................................................... 80
SECURITY BRIEFING................................................................................................................................. 81

**INDEX OF RESOLUTIONS PASSED** ...................................................................................................... **83**

**RESOLUTIONS** ........................................................................................................................................ **84**

**APA MEMBERS IN ATTENDANCE**.......................................................................................................... **114**

**APA NON MEMBERS** ............................................................................................................................... **116**

| | | Current Liabilities | |
|---|---|---|---|
| Accounts Payable | | $194,606 | |
| Accrued Benefits | | 1,009,373 | |
| Other Current Liabilities | | 369,861 | |
| | Total Current Liabilities | | $1,573,840 |
| | | Other Liabilities | |
| Special Funds | | 46,565 | |
| Deferred 1/2% Dues | | 3,233,501 | |
| Payable to American Airlines- TRO | | 27,825,085 | |
| Post Retirement Benefits Payable | | 1,741,522 | |
| | Total Other Liabilities | | 32,846,673 |
| | | Net Assets | |
| Unrestricted Net Assets: | | | |
| Balance Beginning of Year | | (10,970,539) | |
| Current Year Surplus | | 711,004 | |
| | Total Unrestricted Net Assets | (10,259,535) | |
| | Total Net Assets | | (10,259,535) |
| | Total Liabilities & Net Assets | | $24,160,978 |

Mr. Lawrence then introduced Mr. Bill Hanley, Managing Director, Public Sector, KPMG, who reviewed APA's Consolidated Financial Statements for June 30, 2001 and 2000. Mr. Hanley advised the Board that in KMPG's opinion, the consolidated financial statements present fairly, in all material respects, the financial position of APA as of June 30, 2001 and 2001, and the changes in its net assets and cash flows for the years then ended in conformity with generally accepted accounting principles.

Mr. Lawrence and Mr. Ed James, General Counsel, reviewed the benefits of clarifying the structure of APA under the Labor-Management Reporting and Disclosure Act of 1959 ("LMRDA"). Mr. James stated the current structure of APA is ambiguous and could be characterized as either a local labor organization or a national labor organization under the LMRDA. In order to avail itself of a number of different options, they would recommend that the domiciles be considered as local labor organizations under the LMRDA and begin filing annual reports as required by Title II of the LMRDA. APA's Accounting Department will prepare and file the annual reports for each domicile.

Resolution R2001-86, APA Structural Changes, will be presented for the Board of Directors' consideration during this meeting. If the resolution is passed, APA legal counsel will advise the Department of Labor that APA considers its domiciles to be local labor organizations under the LMRDA.

**MOTION to postpone approval of Financial Report**
A motion was made to postpone approval of Financial Report until final review by Legal Counsel. Motion passed 15-0-0-1.

**BE IT FURTHER RESOLVED,** that the APA President write a letter to notify the former APA FCU, now known as the Allied First Bank, notifying them to cease and desist using the APA Logo effective December 1, 2001.

MAKER:      Sheets          SECONDED:    Aitken
FOR:        Bloom, LeRuth, Breslin, Sheets, Beall, Sproc, Frazer, Hayes (DDR-Mayer), Farrell, Girard, Turcotte, Boettcher (DDR-Annable), Aitken, Horan (DDR-Dunning), Eitel
AGAINST:    -0-
ABSTAIN:    Abbott
ABSENT:     -0-

✱✱✱✱✱

**R2001-86 - APA Structural Changes:** Passed 16-0-0-0

**WHEREAS,** the APA Board of Directors desires to clarify the structure of APA in order to avail itself of a number of different options under the Labor-Management Reporting and Disclosure Act of 1959 ("LMRDA"); and

**WHEREAS,** the current structure of APA is ambiguous and could be characterized as either a local labor organization or a national labor organization under the LMRDA; therefore

**BE IT RESOLVED,** that the domiciles be considered as local labor organizations under the LMRDA and begin filing annual reports as required by Title II of the LMRDA.

**BE IT FURTHER RESOLVED,** that APA legal counsel advise the Department of Labor that APA considers its domiciles to be local labor organizations under the LMRDA.

MAKER:      Beall           SECONDED:    Aitken
FOR:        Bloom, Abbott, Karn (DDR-LeRuth), Breslin, Sheets, Beall, Sproc, Frazer, Mayer, Farrell, Girard, Turcotte, Boettcher (DDR-Annable), Aitken, Horan (DDR-Dunning), Eitel
AGAINST:    -0-
ABSTAIN:    -0-
ABSENT:     -0-

✱✱✱✱✱

**R2001-87 - APA Captain's D&R:** Passed as amended 15-1-0-0

**BE IT RESOLVED,** APA will coordinate a Captain's D & R briefing to be conducted by appropriate officers, committee personnel and staff. (*Tailored to fit location*)

MAKER:      Beall           SECONDED:    LeRuth
FOR:        Bloom, LeRuth, Breslin, Sheets, Beall, Sproc, Frazer, Hayes (DDR-Mayer), Farrell, Girard, Turcotte, Boettcher (DDR-Annable), Aitken, Horan (DDR-Dunning), Eitel
AGAINST:    Abbott
ABSTAIN:    -0-
ABSENT:     -0-

✱✱✱✱✱

**R2001-88 - Flight Operations Quality Assurance:** Passed as amended 10-5-1-0

**WHEREAS,** Flight Operations Quality Assurance ("FOQA") has the ability provide significant enhancements to safety by identifying operational trends; and

*DISPOSITION: Passed 16-0-0-0*

| R2001-86 | DOMICILE: __DFW__ | FOR | 16 |
| BOD MTG: 10/21-10/28/2001 | | AGAINST | 0 |
| CBOD MTG: 11/06-11/08/2001 | | ABSTAIN | 0 |
| | | ABSENT | 0 |

Title: __APA STRUCTURAL CHANGES__

Presented by: __Captain Phillip Beall__   Seconded by: __First Officer Al Aitken__

Policy Manual:_____   Cons. & Bylaws:_____

1    **WHEREAS,** the APA Board of Directors desires to clarify the structure of APA in order to

2    avail itself of a number of different options under the Labor-Management Reporting and Disclosure Act

3    of 1959 ("LMRDA"); and

4    **WHEREAS,** the current structure of APA is ambiguous and could be characterized as either a

5    local labor organization or a national labor organization under the LMRDA; therefore

6    **BE IT RESOLVED,** that the domiciles be considered as local labor organizations under the

7    LMRDA and begin filing annual reports as required by Title II of the LMRDA.

8    **BE IT FURTHER RESOLVED,** that APA legal counsel advise the Department of Labor

9    that APA considers its domiciles to be local labor organizations under the LMRDA.

R2001-86

EXHIBIT
tabbies
2

U.S. Department of Labor
Office of Labor-Management Standards
Washington, DC 20210

# FORM LM-3 LABOR ORGANIZATION ANNUAL REPORT

Form Approved
Office of Management and Budget
No:      1245-0003
Expires:  08-31-2016

FOR USE ONLY BY LABOR ORGANIZATIONS WITH LESS THAN $250,000 IN TOTAL ANNUAL RECEIPTS

This report is mandatory under P.L. 86-257, as amended. Failure to comply may result in criminal prosecution, fines, or civil penalties as provided by 29 U.S.C. 439 or 440.

READ THE INSTRUCTIONS CAREFULLY BEFORE PREPARING THIS REPORT.

For Official Use Only

US DOL RECEIVED SEP 2 8 2015 OLMS DRDA

E

| 1. FILE NUMBER | 2. PERIOD COVERED |
|---|---|
| 542-362 | MO   DAY   YEAR |
| | From   07/01/2014 |
| | Through   06/30/2015 |

3. (a) AMENDED - If this is an amended report correcting a previously filed report, check here: ☐

(b) TERMINAL - If your organization ceased to exist and this is its terminal report, see Section XII of the instructions and check here: ☐

4. AFFILIATION OR ORGANIZATION NAME
ALLIED PILOTS ASSOCIATION

5. DESIGNATION (Local, Lodge, etc.)
LOCAL UNION

6. DESIGNATION NUMBER

7. UNIT NAME (if any)
DOMICILE DALLAS (DFW)

8. MAILING ADDRESS (Type or print in capital letters)

| First Name | Last Name |
|---|---|
| SALLY | COX |

P.O. Box - Building and Room Number (if any)

Number and Street
14600 TRINITY BLVD #500

City
FORT WORTH

| State | ZIP Code + 4 |
|---|---|
| TX | 76155-2512 |

9. Are your organization's records kept at its mailing address? (If "No," provide address in Item 56.)    Yes ☒ No ☐

56. ADDITIONAL INFORMATION (Text entered will appear on last page of form. To enter comments, press the "General Additional Information" button.)

Each of the undersigned, duly authorized officers of the above labor organization, declares, under penalty of perjury and other applicable penalties of law, that all of the information submitted in this report (including the information contained in any accompanying documents) has been examined by the signatory and is, to the best of the undersigned's knowledge and belief, true, correct, and complete. (See Section VI on penalties in the instructions.)

| 57. SIGNED: | CHAIRMAN | 58. SIGNED: | VICE CHAIRMAN |
|---|---|---|---|
| _(signature)_ | (If other title, see instructions.) | _(signature)_ | (If other title, see instructions.) |
| 9 Sep 2015 | 817-302-2272 | 14 SEP 15 | 817-302-2272 |
| Date | Telephone Number | Date | Telephone Number |

EXHIBIT 3

(Revised 2010)

During the Reporting Period Did Your Organization:

FILE NUMBER: 542-362

10. Have a 'subsdiary organization' as defined in Section X of the instructions?
Yes ☐  No ☒

11. Create or participate in the administration of a trust or other fund or organization, as defined in the instructions, which provides benefits for members or their beneficiaries?
Yes ☐  No ☒

12. Have a political action committee (PAC) fund?
Yes ☐  No ☒

13. Acquire or dispose of any goods or property in any manner other than by purchase or sale?
Yes ☐  No ☒

14. Have an audit or review of its books and records by an outside accountant or by a parent body auditor/representative?
Yes ☒  No ☐

15. Discover any loss or shortage of funds or other property? (Answer "Yes" even if there has been repayment or recovery.)
Yes ☐  No ☒

16. Have any officer who was paid $10,000 or more by your organization and also received $10,000 or more as an officer or employee of another labor organization or of an employee benefit plan?
Yes ☐  No ☒

17. Pay any employee salary, allowances, and other expenses which, together with any payments from affiliates, totaled more than $10,000?
Yes ☐  No ☒

18. Have loans totaling more than $250 to any officer, employee, or member, or make any loans to a business enterprise?
Yes ☐  No ☒

19. How many members did the labor organization have at the end of the reporting period?
2,945

20. What is the maximum amount recoverable under your organization's fidelity bond for a loss caused by any officer or employee of your organization?
$500,000

21. During the reporting period, did your organization have any changes in its constitution and bylaws (other than rates of dues and fees) or in practices/procedures listed in the instructions? (If the constitution and bylaws or practices/procedures have changed, see the instructions.)
Yes ☒  No ☐

22. What is the date of the labor organization's next regular election of officers?
05/2016

23. What are the labor organization's rates of dues and fees? (Enter a minimum and maximum if more than one rate applies for any line.)

| Rates of Dues and Fees | | | | | |
|---|---|---|---|---|---|
| Dues/Fees | Amount | | Unit | Minimum | Maximum |
| (a) Regular Dues/Fees | 1% Salary | per | Month | 0 | 0 |
| (b) Initiation Fees | $0-$25 | per | N/A | 0 | 25 |
| (c) Transfer Fees | 0 | per | N/A | 0 | 0 |
| (d) Work Permits | 0 | per | N/A | 0 | 0 |

If the answer to any of the above questions is "Yes," provide details in Item 56 (Additional Information) as explained in the instructions for each item.

24. 'ALL OFFICERS AND DISBURSEMENTS TO OFFICERS | Enter Amounts in Dollars Only - Do Not Enter Cents |   FILE NUMBER:   542-362

| (A) Name     (List all persons who held office during the reporting period even if they received no salary or other disbursements. Use all capital letters.) | | | Gross Salary (before taxes and other deductions) (D) | Allowances and Other Disbursements (E) | TOTAL (F) |
|---|---|---|---|---|---|
| (B) Name   (Enter title of officer, such as PRESIDENT or TREASURER)  (C) Status * | | | | | |
| 1. Last Name | First Name | Initial | | | |
| Westbrook | Thomas | | $0 | $0 | $0 |
| Title | | Status | | | |
| Chairman | | C | | | |
| 2. Last Name | First Name | Initial | | | |
| Wales | John | | $0 | $0 | $0 |
| Title | | Status | | | |
| Vice Chairman | | C | | | |
| 3. Last Name | First Name | Initial | | | |
| | | | | | |
| Title | | Status | | | |
| 4. Last Name | First Name | Initial | | | |
| | | | | | |
| Title | | Status | | | |
| 5. Last Name | First Name | Initial | | | |
| | | | | | |
| Title | | Status | | | |
| 6. Last Name | First Name | Initial | | | |
| | | | | | |
| Title | | Status | | | |
| Total | | | $0 | $0 | $0 |
| | | | | Less Deductions | $0 |
| The Total from Net Disbursements will be entered in Item 45 | | | | Net Disbursements | $0 |

* Code for (C) Status: past officer - P; continuing officer - C; new officer during the reporting period - N

(If the officer was not elected at a regular election in accordance with your organization's constitution and bylaws, explain in Item 56 on Page 1.)

Form LM-3 (Revised 2010)                                                                 Page 3 of 5

FILE NUMBER: 542-362

Enter Amounts in Dollars Only - Do Not Enter Cents

### STATEMENT A — ASSETS AND LIABILITIES

| ASSETS Item | Start of Reporting Period (A) | End of Reporting Period (B) | LIABILITIES Item | Start of Reporting Period (C) | End of Reporting Period (D) |
|---|---|---|---|---|---|
| 25. Cash | $66,841 | $73,350 | 32. Accounts Payable | $0 | $0 |
| 26. Loans Receivable | $0 | $0 | 33. Loans Payable | $0 | $0 |
| 27. U.S. Treasury Securities | $0 | $0 | 34. Mortgages Payable | $0 | $0 |
| 28. Investments | $0 | $0 | 35. Other Liabilities | $0 | $0 |
| 29. Fixed Assets | $0 | $0 | 36. TOTAL LIABILITIES | $0 | $0 |
| 30. Other Assets | $0 | $0 | | | |
| 31. TOTAL ASSETS | $66,841 | $73,350 | 37. NET ASSETS (Item 31 Less Item 36) | $66,841 | $73,350 |

### STATEMENT B — RECEIPT AND DISBURSEMENTS

| CASH RECEIPTS Item | AMOUNT | CASH DISBURSEMENTS Item | AMOUNT |
|---|---|---|---|
| 38. Dues | $0 | 45. To Officers (from Item 24) | $0 |
| 39. Per Capita Tax | $0 | 46. To Employees (less deductions) | $0 |
| 40. Fees, Fines, Assesments & Work Permits | $0 | 47. Per Capita Tax | $0 |
| 41. Interest & Dividends | $232 | 48. Office & Administrative Expense | $439 |
| 42. Sale of Investments & Fixed Assets | $0 | 49. Professional Fees | $0 |
| 43. Other Receipts | $17,348 | 50. Benefits | $0 |
| 44. TOTAL RECEIPTS | $17,580 | 51. Contributions, Gifts & Grants | $432 |
| If total receipts reported in Item 44 are $250,000 or more, your organization must file Form LM-2 instead of this form | | 52. Purchase of Investments & Fixed Assets | $0 |
| | | 53. Loans Made | $0 |
| | | 54. Other Disbursements | $10,200 |
| | | 55. TOTAL DISBURSEMENTS | $11,071 |

## 56. ADDITIONAL INFORMATION SUMMARY

FILE NUMBER:   542-362

Item 57 Title: The officers of the Dallas (DFW) domicile of the Allied Pilots Association are the Chairman and Vice Chairman. The titles of President and Treasurer do not exist.

Item 58 Title: The officers of the Dallas (DFW) domicile of the Allied Pilots Association are the Chairman and Vice Chairman. The titles of President and Treasurer do not exist.

Question 14: An audit of the books and records of the Allied Pilots Association was performed by the independent accounting firm KPMG LLP. The activities of the Dallas (DFW) domicile are included in this audit.

Question 21: The Allied Pilots Association (File Number 059-849), the national parent organization, has filed a copy of the amended Constitution and Bylaws and Policy Manual on behalf of all its domicile organizations.

## Latrice Andrews

| | |
|---|---|
| **From:** | Tom Westbrook <tomwestbrook@bresnan.net> |
| **Sent:** | Sunday, September 20, 2015 2:39 PM |
| **To:** | National Officers |
| **Subject:** | DFW Election Complaint |

Keith,

It has come to my attention that APA has received a proposal dated 3 September 2015 to settle the civil suit brought by the Department of Labor stemming from the election complaint filed following the April 2014 DFW Domicile Election.

That suit was filed in US District Court in December of 2014 and names both the Allied Pilots and the DFW Domicile as defendants.

As the elected chairman of the DFW Domicile, it was my expectation that I would be either be included in the defense of this lawsuit or in the alternative, provided independent counsel to ensure that the interests of the Domicile are protected. Instead, the APA's defense of this lawsuit has been conducted by APA's general counsel who was actively involved in the Appeal Board proceedings which rejected the initial complaint, who made disparaging remarks to the APA Board of Directors in open session in response to the filing of the complaint, and who has actively defended BallotPoint's processes against similar complaints for more than a decade.

To date, neither I, nor any representative of the DFW Domicile has been informed of the status of settlement discussions nor been permitted to participate in formulating settlement proposals or responses. I have gained access to limited glimpses of what I presume to be a larger body of correspondence between general counsel and the DOL, but am certain that there is far more going on that I have been excluded from.

After sharing extensively with you the concerns and motivation behind the filing of the election complaint (which was to have the DOL rule on LMRDA observability and ballot secrecy issues inherent in BallotPoint's process - issues beyond the power of APA to definitively resolve), I had hoped to be able to spare the association the expense of hiring separate counsel to protect the interests of the DFW Domicile during this process. However, general counsel's focus on the defense of Ballot Point combined with the complete exclusion of the DFW Domicile from the process of responding to the DOL's filing has led me to reluctantly conclude that while general counsel may protect APA's interests, his focus on defending Ballot Point's interests create a potential conflict with the interests of the DFW Domicile.

I therefore formally request that the APA arrange for independent counsel to be provided to the DFW Domicile and that settlement discussions be suspended until such counsel is retained and allowed to join the process.

Thank you for your assistance in this matter.

Tom Westbrook
Chairman, DFW Domicile

1



EXHIBIT

4

tabbies

R2000 –118 Rev. 1   DOMICILE:___ARB_____          FOR          13
BOD MTG:  10/24-28/2000                                  AGAINST      1
                                                         ABSTAIN      0
                                                         ABSENT       2

Title:  Independent Legal Services _____

Presented by: ___CA Tom Bloom_____ Seconded by: ___FO Steve Bacon_____

Policy Manual:_____Cons. & Bylaws:_____

1      **WHEREAS,** it is imperative for the legislative body of any organization to have legal

2   services which offer completely independent opinions; therefore

3      **BE IT RESOLVED,** that the General Counsel and In-House Legal Director shall report

4   directly to the Board of Directors.  The staff of the General Counsel shall report to the General

5   Counsel.  The staff of the In-House Legal Director shall report directly to the Legal Director.

EXHIBIT
tabbies
5

## Latrice Andrews

| | |
|---|---|
| **From:** | Steven Hoffman <skhoffman@jamhoff.com> |
| **Sent:** | Monday, September 21, 2015 11:00 AM |
| **To:** | Tom Westbrook |
| **Cc:** | Keith Wilson (kwilson@alliedpilots.org); Pam Torell; Edgar James |
| **Subject:** | FW: DFW Election Complaint |

Tom:

I received the attached note from Keith today and also received a call from Pam suggesting that you and I talk. I'd be happy to do that. I should say by way of introduction that the lineup of parties in the case raises very prickly issues concerning who represents whose interests in the case. You are indeed the elected Chair of the DFW Domicile, but your interests as the protestor of the election at issue aligns your interests with the DOL, the party adverse to the Domicile and the APA in the case. Happy to explore these and any other issues you'd like to discuss. Let me know when you are available.

-----Original Message-----
From: Wilson, Keith [mailto:KWilson@alliedpilots.org]
Sent: Monday, September 21, 2015 11:36 AM
To: Edgar James; Steven Hoffman
Subject: FW: DFW Election Complaint

FYI,

Any thoughts on how to proceed?

Keith W

On 9/20/15, 2:39 PM, "Tom Westbrook" <tomwestbrook@bresnan.net> wrote:

>Keith,
>
>It has come to my attention that APA has received a proposal dated 3
>September 2015 to settle the civil suit brought by the Department of
>Labor stemming from the election complaint filed following the April
>2014 DFW Domicile Election.
>
>That suit was filed in US District Court in December of 2014 and names
>both the Allied Pilots and the DFW Domicile as defendants.
>
>As the elected chairman of the DFW Domicile, it was my expectation that
>I would be either be included in the defense of this lawsuit or in the
>alternative, provided independent counsel to ensure that the interests
>of the Domicile are protected. Instead, the APA's defense of this
>lawsuit has been conducted by APA's general counsel who was actively
>involved in the Appeal Board proceedings which rejected the initial
>complaint, who made disparaging remarks to the APA Board of Directors
>in open session in response to the filing of the complaint, and who has
>actively defended BallotPoint's processes against similar complaints
>for more than a decade.



EXHIBIT
6

>
>To date, neither I, nor any representative of the DFW Domicile has been
>informed of the status of settlement discussions nor been permitted to
>participate in formulating settlement proposals or responses. I have
>gained access to limited glimpses of what I presume to be a larger body
>of correspondence between general counsel and the DOL, but am certain
>that there is far more going on that I have been excluded from.
>
>After sharing extensively with you the concerns and motivation behind
>the filing of the election complaint (which was to have the DOL rule on
>LMRDA observability and ballot secrecy issues inherent in BallotPoint's
>process - issues beyond the power of APA to definitively resolve), I
>had hoped to be able to spare the association the expense of hiring
>separate counsel to protect the interests of the DFW Domicile during
>this process. However, general counsel's focus on the defense of Ballot
>Point combined with the complete exclusion of the DFW Domicile from the
>process of responding to the DOL's filing has led me to reluctantly
>conclude that while general counsel may protect APA's interests, his
>focus on defending Ballot Point's interests create a potential conflict
>with the interests of the DFW Domicile.
>
>I therefore formally request that the APA arrange for independent
>counsel to be provided to the DFW Domicile and that settlement
>discussions be suspended until such counsel is retained and allowed to
>join the process.
>
>Thank you for your assistance in this matter.
>
>Tom Westbrook
>Chairman, DFW Domicile