**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| THOMAS E. PEREZ, SECRETARY OF LABOR, | ) ) ) ) |
| Plaintiff, | ) Case No. 4:14-CV-00997-O ) |
| v. | ) Judge Reed C. O'Connor ) |
| DALLAS-FORT WORTH DOMICILE, ALLIED PILOTS ASSOCIATION, *et al.*, | ) ) ) ) ) |
| Defendants. | ) ) |

**DEFENDANT ALLIED PILOTS ASSOCIATION'S MEMORANDUM IN SUPPORT OF ITS RESPONSE IN OPPOSITION TO THE OPPOSED MOTION FOR SUBSTITUTION OF COUNSEL AND OBJECTION TO AGREED MOTION FOR ENTRY OF CONSENT DECREE**

Pursuant to this Court's November 5, 2015, Scheduling Order (Dkt. No. 23), Defendant Allied Pilots Association ("APA") respectfully submits this memorandum in support of its Response in Opposition to the Opposed Motion for Substitution of Counsel (Dkt. No. 21) ("Motion") and the Objection to Agreed Motion for Entry of Consent Decree (Dkt. No. 22) ("Objection") purportedly filed on behalf of Defendant Dallas-Fort Worth Domicile, APA ("DFW Domicile").[1]

Under the APA Constitution and Bylaws ("C&B"), a binding contract between the APA and its domiciles, the DFW Domicile has no authority over domicile elections or protests thereto; on the contrary, it has ceded plenary authority over such matters to the APA. Neither does the

---

[1] The Court's Order indicates that Defendants oppose the Agreed Motion for Entry of Consent Decree ("Consent Decree Motion"). That is not the case. The APA fully supports the Consent Decree Motion.

DFW Domicile have any authority to challenge the decision of the APA President to settle this election case. Thus, the DFW Domicile has no legal interest in or standing to challenge the Stipulation of Settlement between Plaintiff Secretary of Labor (the "DOL") and the APA regarding the disputed domicile election at issue in this case. Accordingly, its Motion and Objection should be denied.

## STATEMENT OF PERTINENT FACTS

### I. The Structure of the APA

The APA is a "two-tiered labor organization consisting of domiciles and a national union." C&B Art. I § 4(A) (attached as Exhibit A to the accompanying Declaration of Keith Wilson ("Wilson Decl.")), Appendix ("App.") at 13. The domiciles, including the DFW Domicile, are not independent labor unions, but rather bound to the APA by the C&B. *See id.* The C&B is the "supreme law" of the APA and is binding on individual members, the national union and the domiciles. *See id.*, Art. III § 7(E), App. at 22.

The officers of the APA are the President, Vice President, and Secretary-Treasurer, who are elected by the entire membership of the APA to three-year terms. *Id.* Art. IV §§ 1 (Officers Defined), 5 (National Office Election Procedures), 7 (Terms of National Office and Vacancies) & 8 (Duties of National Officers), App. at 22, 23, 24, 25–26. *Accord* Wilson Decl. ¶ 4, App. at 2. The President has "authority to direct the day-to-day affairs of APA," consistent with the C&B and the policy and directives set by the Board of Directors. C&B Art. IV § 8(A), App at 25. He is assisted in those duties by the Vice President and Secretary-Treasurer. *See id.* Art. IV § 8(B, C), App. at 25–26. *Accord* Wilson Decl. ¶ 4, App. at 2. The President also has authority to "sign any agreement entered into between APA and a third party" and to interpret the C&B. C&B Art. IV § 8(A), App. at 25.

The President's actions are "presumed valid unless the Board of Directors elects to review and disapprove a particular action taken by the President." *Id.* Art. IV § 8(A), App. at 25; *see also id.* Art. V § 1(A) ("[A]bsent a specific vote disapproving an action taken by a National Officer, the action shall be presumed valid."), App. at 26. The Board of Directors consists of two domicile representatives—a Chair and Vice Chair—from each of the APA's eleven domiciles. *See id.* Art. V § 2(A), App. at 26; Wilson Decl. ¶ 6, App. at 2. The Chair and Vice Chair for each domicile, including the DFW Domicile, are elected by members in good standing at the domicile to two-year terms. *See* C&B Art. VI §§ 3, 4(A), App. at 28–29, 30; Wilson Decl. ¶ 6, App. at 2.

Pursuant to the C&B, the APA conducts elections both for National Officers and for domicile Chairs and Vice Chairs. Wilson Decl. ¶ 7, App. at 2. Under Article IV Sections 4 and 5, the APA Secretary-Treasurer supervises the nomination and election process for National Officer elections. App. at 22–23. She does the same under Article VI Section 3 for domicile elections for Chair and Vice Chair. App. at 28–29. Domiciles and domicile representatives have no role in the conduct of domicile elections. *Id.*

The C&B sets forth an exclusive internal appeals process to handle protests of both National Officer and domicile elections. *Id.* Art. IV § 6, Art. VI § 5, App. at 24, 30–31. Article VII(D) of the C&B establishes an APA Appeal Board, and the Appeal Board "consider[s] all complaints, protests, or appeal[s] concerning APA elections," whether for National Officer or domicile elections. *Id.* Domiciles and domicile representatives have no role in considering or resolving complaints or protests to domicile elections. *See id.* Art. VI § 5, App. at 30–31; Wilson Decl. ¶ 7, App. at 2.

**II.    The Challenge to the 2014 DFW Domicile Election**

Consistent with its C&B, the APA held an election for its DFW Domicile representatives, which concluded on April 2, 2014.  Complaint (Dkt. No. 1) ¶ 8.[2]  Captain Thomas Westbrook won the election for Chair in that election, and First Officer Josie Wales won the election for Vice Chair.  *See id.* ¶ 9; Answer (Dkt. No. 8) ¶ 9; Wilson Decl. ¶ 9, App. at 3.  Apparently dissatisfied with the conduct of the election despite his victory, Captain Westbrook filed a protest with the APA Appeal Board.  *See* Complaint ¶ 9; Answer ¶ 9; Wilson Decl. ¶ 10, App. at 3.  The Appeal Board denied that protest and issued a lengthy written decision finding that Captain Westbrook had been validly elected Chair of the DFW Domicile.  Wilson Decl. ¶ 12, App. at 3.

Captain Westbrook then filed a timely complaint with the DOL under the Labor-Management Reporting and Disclosure Act ("LMRDA") pursuant to 29 U.S.C. § 482(a).  *Id.* ¶ 13, App. at 3; Complaint ¶¶ 9–11; Answer ¶¶ 9–11.  The DOL investigated Captain Westbrook's complaint and, after attempts to resolve the dispute failed, brought the instant suit under the LMRDA.  *See* Complaint ¶¶ 9–11; Wilson Decl. ¶¶ 14, 16, 17, App. at 3, 4.  The DOL named both the APA and DFW Domicile as parties; however, its Complaint expressed uncertainty as to whether the DFW Domicile was a "separate labor organization from APA, its parent body" and if it had played any role in conducting the 2014 election at issue.  *See* Complaint ¶ 7.

The DOL and the APA continued settlement discussions even after the commencement of discovery in this case.  Wilson Decl. ¶¶ 20–21, App. at 4.  Defendants APA and DFW Domicile were represented during settlement discussions by Secretary-Treasurer Pam Torell and Election Officer Charles Hairston, the APA officials responsible for running the 2014 DFW Domicile election, as well as the APA's outside General Counsel.  *See id.* ¶¶ 15, 21, App. at 3, 4.  At some

---

[2]    Consistent with the Board generated APA Policy Manual, the election was conducted electronically.  Wilson Decl. ¶ 8, App. at 2; Policy Manual § 3.03, App. at 48.

4

point, Captain Westbrook complained to APA President Keith Wilson that he should have a role in the settlement discussions as Chair of the DFW Domicile. *Id.* ¶ 22, App. at 4. Captain Wilson referred him to APA General Counsel, who explained to Captain Westbrook that the DFW Domicile had no role under the C&B in running the election or dealing with challenges to the election and also informed Captain Westbrook that he had a personal conflict of interest as the protester in the election at issue because his interests as protestor were represented by the DOL in the case. *See id.* ¶ 23, App. at 5. First Officer Wales also complained to Captain Wilson about his lack of involvement in the negotiations. *See id.* ¶ 24, App. at 5.

After months of negotiations, the DOL and the APA reached a mutually agreeable Stipulation of Settlement and have jointly moved this Court for entry of a consent decree. *See* Agreed Motion for Entry of Consent Decree (Dkt. No. 20). The Stipulation of Settlement balances the interests of the DOL and the APA, while preserving the positions of Captain Westbrook and First Officer Wales as Chair and Vice Chair of the DFW Domicile. *See id.*, Stipulation of Settlement ¶ 2 ("APA will conduct an election, under the supervision of DOL, … for its next regularly scheduled election for the offices of Chairman and Vice Chairman of the [DFW Domicile]"; and the results of the 2014 DFW Domicile election "will remain in effect").[3] Captain Wilson signed the Stipulation of Settlement as President of the APA, on behalf of the APA and all of its domiciles, including the DFW Domicile. *See id.*, Stipulation of Settlement at 6; Wilson Decl. ¶¶ 25–26, App. at 5. He also instructed undersigned counsel to sign the Stipulation on behalf of the APA and the DFW Domicile as counsel for both Defendants. *See id.* ¶¶ 19, 26, App. at 4, 5.

---

[3] In its Complaint, the DOL had sought to have the results of the DFW Domicile election voided and the election rerun, thereby putting the positions of Captain Westbrook and First Officer Wales in jeopardy. Complaint at 6 (Prayer for Relief).

Shortly thereafter, Captain Westbrook and First Officer Wales expressed their disagreement with the terms of the Stipulation of Settlement and their intent to challenge the settlement in this Court. *See id.* ¶ 28, App. at 5. Despite the fact that neither the DFW Domicile nor its representatives have authority under the C&B over matters relating to domicile elections or challenges thereto, Captain Westbrook and First Officer Wales have apparently retained counsel—purportedly on behalf of the DFW Domicile— to register their objection to the terms agreed to by the APA and the DOL. *See* Objection ¶¶ 3–4.[4]

**ARGUMENT**

**I.    Under the Binding Authority of the C&B, the DFW Domicile Has Ceded to the APA Plenary Authority to Conduct Domicile Elections and Resolve Challenges to the Results of Those Elections.**

It is well established that a union constitution is a binding "contract between labor organizations." *United Ass'n of Journeymen v. Local 334*, 452 U.S. 615, 619 (1981). *Accord Wooddell v. Int'l Bhd. of Elec. Workers, Local 71*, 502 U.S. 93, 101 (1991); *Local 1052 of United Bhd. of Carpenters & Joiners of Am. v. Los Angeles Cnty. Dist. Council of Carpenters*, 944 F.2d 610, 613 (9th Cir. 1991). The C&B in particular is the "supreme law" of the APA and is binding on the national union as well as the domiciles. *See supra* at 2. With respect to matters addressed in the C&B, the DFW Domicile is not an independent labor organization, but, rather, a labor organization bound and subordinate to the APA by the C&B. *See supra* at 2–3.

It is also well established that a union's interpretation of its own constitution is entitled to judicial deference. *See Newell v. Int'l Bhd. of Elec. Workers*, 789 F.2d 1186, 1189 (5th Cir.

---

[4] The Objection does not identify any particular provision of the settlement as objectionable, only the exclusion of the Domicile or its representation from the negotiations. The Domicile's Motion also attempts to remove undersigned counsel from representing the Domicile, notwithstanding President Wilson's decision to retain counsel to represent both Defendants.

6

1986) ("[W]e must give deference to [a] union's interpretation of its own constitution. Courts should strive to avoid interference with internal union affairs. We will not invalidate [a union's] interpretation of its own constitution unless it is patently unreasonable." (citations and quotation marks omitted)). And under the C&B, the APA President has the authority to interpret that governing document. *See supra* at 2. As pertinent here, the C&B confers no authority on domiciles or domicile representatives over domicile elections or the resolution of challenges thereto. *See supra* at 3. On the contrary, the C&B vests plenary authority over the conduct of domicile elections and resolution of election challenges to the APA. *See id*. Neither do any of the APA Domiciles have any authority over the APA President's capacity to execute agreements between the APA and third parties, including litigation settlement agreements. *See supra* at 2.

In view of the above, the DFW Domicile's contention that it "is a separate party with separate interests" with respect to the Consent Decree Motion or the Stipulation of Settlement, Objection ¶ 4, provides no support for either its Motion or Objection because, as demonstrated above, even assuming, *arguendo*, that the DFW Domicile is a separate labor organization from the APA, it is nonetheless bound by the C&B. *United Ass'n of Journeymen*, 452 U.S. at 619; *Wooddell*, 502 U.S. at 101; *Local 1052*, 944 F.2d at 613. Under the C&B, the DFW Domicile has ceded all authority it could theoretically claim over domicile elections and challenges thereto to the APA. *See supra* at 3.

Neither does the C&B require the APA to obtain the DFW Domicile's consent to enter into agreements such as the proposed Stipulation of Settlement. Rather, the C&B vests in the APA President the authority to "sign any agreement entered into between APA and a third party," and President Wilson has executed the Stipulation of Settlement on behalf of the APA and its domiciles pursuant to that authority. *See supra* at 2. His action in doing so is presumed

7

valid unless the Board of Directors declares otherwise, and the Board has not done so in connection with the Stipulation of Settlement. *See supra* at 2–3.

## II.  The DFW Domicile Has No Legal Interest or Standing to Challenge the Stipulation of Settlement Between the APA and the DOL.

Because of the C&B's express reservation of plenary authority to the APA to conduct and resolve challenges to domicile elections and its grant of authority to the APA President to execute agreements with third parties (e.g., the DOL in this instance), the DFW Domicile has no legal interest in a challenge to the Stipulation of Settlement between the APA and the DOL. And without a legal interest in a particular issue, an entity like the Domicile has no standing to invoke the Court's jurisdiction with respect to that issue. *See, e.g.*, *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004); *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (court must examine whether party entitled to adjudication of the particular claim asserted); *Ward v. Santa Fe Indep. Sch. Dist.*, 393 F.3d 599, 606 (5th Cir. 2004); *Aero Meridian Associates DP v. City of Denison*, No. 4:06CV457, 2007 WL 2900530, at *2–3 (E.D. Tex. Sept. 28, 2007) (party with "no legal interest" in a particular property had no standing to challenge a regulatory act or failure to act directed at that property in which the party had no interest); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (plaintiffs must have suffered an "invasion of a *legally protected interest*" to have standing (emphasis added)).[5]

---

[5]  To the extent Captain Westbrook has any personal legal interest as the one who protested the election at issue to the DOL, his interests are aligned with the DOL, which has carried his protest to litigation, not with the APA or its DFW Domicile. The DOL, however, was not obligated to seek his views on the settlement. *See Creese v. Dole*, 776 F. Supp. 1474, 1478 (D. Colo. 1991) ("neither due process nor the LMRDA imposes a duty on the Secretary to consult with complainant[]" about settlement negotiations regarding his charges against the union). Moreover, because the DOL had a fully rational basis for entering into the Stipulation of Settlement, any complaint Captain Westbrook may have with that decision must fail. *Kleinerman v. Chao*, No. CIV A 05-2699 HAA, 2007 WL 1752039, at *3 (D.N.J. June 18, 2007) (finding DOL had rational and defensible basis for entering into settlement agreement with local union and dismissing complaint filed by union member who protested election to the DOL).

8

Accordingly, as a matter of law, the DFW Domicile has no standing to challenge the settlement agreement between the APA and the DOL at issue here.

## CONCLUSION

For the reasons set forth above, the Court should deny the DFW Domicile's Motion and Objection and grant the Agreed Motion for Entry of Consent Decree.

Respectfully submitted,

s/ Sanford R. Denison
SANFORD R. DENISON
Texas Bar No. 05655560
Baab & Denison, LLP
6301 Gaston Avenue, Suite 550
Dallas, Texas 75214
Telephone: (214) 637-0750
Facsimile: (214) 637-0730
Email: denison@baabdenison.com

Counsel for Defendants Allied Pilots Association and the Dallas-Fort Worth Domicile

Dated: November 10, 2015

---

First Officer Wales, who, unlike Captain Westbrook, never protested the election, lacks even a personal legal interest to assert here.

## **CERTIFICATE OF SERVICE**

On November 10, 2015, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that a copy of the foregoing was served electronically to the Plaintiff's counsel at the address shown below:

    Brian W. Stoltz
    Assistant United States Attorney
    Texas Bar No. 24060668
    1100 Commerce Street, Third Floor
    Dallas, Texas 75242-1699
    Telephone: 214-659-8626
    Facsimile:  214-659-8807
    brian.stoltz@usdoj.gov

    Attorney for Plaintiff

In addition, I certify that a copy of the foregoing was served electronically and via first-class mail on the following:

    Mark D. Winnubst
    Texas Bar No. 21781200
    Latrice E. Andrews
    Texas Bar No. 24063984
    Sheils Winnubst PC
    1701 N. Collins Blvd., Suite 1100
    Richardson, Texas 75080
    Telephone: 972-644-8181
    Facsimile: 972-644-8180
    mark@sheilswinnubst.com
    latrice@sheilswinnubst.com

                                          s/ Sanford R. Denison
                                          SANFORD R. DENISON