# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

| | |
|---|---|
| THOMAS E. PEREZ, SECRETARY OF LABOR, ) ) ) | |
| Plaintiff, ) | Case No. 4:14-CV-00997-O |
| ) | |
| v. ) | Judge Reed C. O'Connor |
| ) | |
| DALLAS-FORT WORTH DOMICILE, ALLIED PILOTS ASSOCIATION, *et al.*, ) ) ) | |
| ) | |
| Defendants. ) | |

**APPENDIX IN SUPPORT OF DEFENDANT ALLIED PILOTS ASSOCIATION'S RESPONSE IN OPPOSITION TO THE OPPOSED MOTION FOR SUBSTITUTION OF COUNSEL AND OBJECTION TO AGREED MOTION FOR ENTRY OF CONSENT DECREE**

In accordance with Local Rules 7.1(i) and 7.2(e), Defendant Allied Pilots Association submits the following documentary evidence in support of its "RESPONSE IN OPPOSITION TO THE OPPOSED MOTION FOR SUBSTITUTION OF COUNSEL AND OBJECTION TO AGREED MOTION FOR ENTRY OF CONSENT DECREE," filed contemporaneously herewith:

| TAB | DOCUMENT | PAGE(S) |
|---|---|---|
| Tab 1 | Declaration of Keith Wilson | APP 1–6 |
| | Exhibit A to Wilson Declaration | APP 7–45 |
| | Exhibit B to Wilson Declaration | APP 46–48 |

Dated: November 10, 2015

Respectfully submitted,

s/ Sanford R. Denison
SANFORD R. DENISON
Texas Bar No. 05655560
Baab & Denison, LLP
6301 Gaston Avenue, Suite 550
Dallas, Texas 75214
Telephone: (214) 637-0750
Facsimile: (214) 637-0730
Email: denison@baabdenison.com

Counsel for Defendants Allied Pilots Association
and the Dallas-Fort Worth Domicile

## CERTIFICATE OF SERVICE

On November 10, 2015, I electronically submitted the foregoing document with the clerk

of court for the U.S. District Court, Northern District of Texas, using the electronic case filing

system of the court.  I hereby certify that a copy of the foregoing was served electronically to

the Plaintiff's counsel at the address shown below:

> Brian W. Stoltz
> Assistant United States Attorney
> Texas Bar No. 24060668
> 1100 Commerce Street, Third Floor
> Dallas, Texas 75242-1699
> Telephone: 214-659-8626
> Facsimile:  214-659-8807
> brian.stoltz@usdoj.gov
>
> Attorney for Plaintiff

In addition, I certify that a copy of the foregoing was served electronically and via first-

class mail on the following:

> Mark D. Winnubst
> Texas Bar No. 21781200
> Latrice E. Andrews
> Texas Bar No. 24063984
> Sheils Winnubst PC
> 1701 N. Collins Blvd., Suite 1100
> Richardson, Texas 75080
> Telephone: 972-644-8181
> Facsimile: 972-644-8180
> mark@sheilswinnubst.com
> latrice@sheilswinnubst.com

> s/ Sanford R. Denison
> SANFORD R. DENISON

Tab 1

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| THOMAS E. PEREZ, SECRETARY OF LABOR, )  )  )  ) | |
|         Plaintiff,    ) )  | Case No. 4:14-CV-00997-O |
|      v.    ) )  | Judge Reed C. O'Connor |
| DALLAS-FORT WORTH DOMICILE, ALLIED PILOTS ASSOCIATION, *et al.*, )  )  )  )  | |
|        Defendants.   ) )  | |

**DECLARATION OF KEITH WILSON**

I, Keith Wilson, do hereby depose and state as follows:

1.      I am an airline pilot employed as a Captain by American Airlines, Inc. ("American"). I am also the elected President of the Allied Pilots Association ("APA"), the certified collective bargaining representative of the American pilots. I have held that position since August 2012.

2.      I make this Declaration on personal knowledge and in support of the APA's Opposition to Defendant Dallas-Fort Worth Domicile, APA's ("DFW Domicile") Opposed Motion for Substitution of Counsel and Objection to Agreed Motion for Entry of Consent Decree.

3.      The APA is a national labor organization, the affairs of which are governed by its Constitution and Bylaws ("C&B"). I attach a true copy of the most recent version of the C&B hereto as Exhibit A.

4.      The day-to-day affairs of the APA are conducted by three National Officers, the President, Vice President and Secretary-Treasurer, who are elected to three year terms by the APA's entire membership. C&B Art. IV §§ 7(A), 8(A, B, C) at 14–16.

5.      The APA President has the authority to "sign any agreement entered into between APA and a third party" and also the authority to interpret the C&B. *Id.* Art. IV § 8(A)(2, 3) at 15.

6.      APA policy is determined by its Board of Directors ("BOD"), which is composed of two representatives (a Chair and a Vice Chair) elected to two year terms by the members of each of the APA's eleven pilot domiciles. *Id.* Art. V §§ 1(A, B), 2(A) at 16–17.

7.      The C&B makes clear that elections for both the National Officers and Domicile representatives are conducted exclusively by the APA and overseen in particular by the APA Secretary-Treasurer. *Id.* Art. IV §§ 4–6 at 12–14 (National Officers); Art. VI §§ 3, 5 at 18–19, 20–21 (Domicile representatives). The Domiciles themselves play no role in the conduct of either National Officer or Domicile representative elections. *Id.* Neither do the Domiciles play any role in considering or ruling on challenges to either National Officer or Domicile election results. *Id.* That responsibility lies exclusively with the APA Appeals Board, the members of which are elected by the BOD. *Id.* Art. VII(D) at 23.

8.      This lawsuit arose out of the April 2, 2014, election of Domicile representatives for the APA's Dallas-Fort Worth Domicile. Consistent with the APA's Policy Manual, a compendium of APA operating rules established by the BOD, that election was conducted electronically. I attach hereto as Exhibit B a true copy of Section 3.03 of the Policy Manual, setting forth the pertinent election rule applied. Although Section 3.03 allows for paper ballots if the APA BOD directs, the APA BOD was not asked to issue nor did it issue such directive in the case of the April 2014 DFW election.

2

9.    At the conclusion of the tally of votes in the April 2014 election, Captain Thomas Westbrook was declared the elected DFW Domicile Chair and First Officer Josie Wales was declared the elected DFW Domicile Vice Chair. Each thereupon joined the APA BOD in those capacities.

10.    Although he had won his election, Captain Westbrook filed a timely protest over the election with the APA's Appeal Board, contending that the election violated provisions of the APA C&B and of the Labor-Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. §§ 481–484.

11.    Neither First Officer Wales nor any of the unsuccessful candidates in the 2014 DFW election filed a protest.

12.    The APA Appeal Board carefully considered each allegation of Captain Westbrook's protest and, in a lengthy written decision with numerous exhibits, denied the protest, finding that Captain Westbrook had been validly elected Chair of the DFW Domicile.

13.    As was his right under the LMRDA, Captain Westbrook then filed a timely protest with the U.S. Department of Labor ("DOL"), raising the same allegations that the election procedures employed by the APA in the election were flawed.

14.    As required by the LMRDA, the DOL conducted an investigation into Captain Westbrook's charges and ultimately concluded that the APA's electronic balloting system did not meet the LMRDA's requirements for ballot secrecy and observability.

15.    During the course of the investigation, the APA, the entity charged with electoral misconduct, was represented by its longtime outside General Counsel, the James & Hoffman, P.C., law firm of Washington, DC, and in particular, Steven Hoffman of the firm. Because the

3

DFW Domicile had played no role in the election, it was not involved in the DOL's investigation.

16.     At the conclusion of the investigation, the DOL demanded that the APA set aside and rerun the elections for both DFW representative officers under the supervision of the DOL.

17.     After efforts to resolve the dispute failed—efforts during which the APA was represented by its Secretary-Treasurer Captain Pam Torell, the APA's Election Officer Charles Hairston and attorney Hoffman, the DOL brought suit in this Court, seeking as relief a ruling that the results of the 2014 DFW election be set aside and that the election for both DFW representative officers be rerun under the DOL's supervision.

18.     In its Complaint in the case, the DOL named as defendants both the APA and the DFW Domicile, although the Complaint candidly conceded the DOL's uncertainty as to whether the Domicile constituted "a separate labor organization from APA" or if it played any role in conducting the 2014 election at issue. *See* Complaint ¶ 7.

19.     Consistent with my authority under the APA C&B, I retained Sanford Denison of the Dallas law firm Baab & Denison, L.L.P., to be APA and the Domicile's attorney of record in the litigation.

20.     Discovery in the case commenced, but so did further discussions to resolve the dispute.

21.     At the settlement discussions, the APA and the Domicile were represented by Secretary-Treasurer Torell and Election Officer Hairston, the APA officials responsible for running the election at issue, and attorney Hoffman of James & Hoffman.

22.     At a certain point in time Captain Westbrook approached me to complain that he, as Chair of the DFW Domicile, should play a role in the settlement discussions.

4

23.     In response, I advised him to discuss the matter with General Counsel, who informed Captain Westbrook 1) that the Domicile had no role under the C&B in running the election in question or dealing with challenges to the election and therefore had no right to participate or interest in the settlement discussions, and 2) as the protestor in the matter, his interests were aligned with those of the DOL in the case, thereby presenting a conflict of interest that precluded him personally from participation in any settlement discussions on behalf of either the APA or the DFW Domicile.

24.     At a certain point thereafter, First Officer Wales approached me to ask whether the Domicile was being adequately represented in the case. I referred him to the APA and the Domicile's attorney of record, Sanford Denison.

25.     The settlement discussions ultimately proved fruitful, and the terms were reduced to writing in a Stipulation of Settlement. That document was presented to me as APA President for signature on behalf of the APA and all of its Domiciles, including the DFW Domicile.

26.     Consistent with my authority under the APA C&B, to which all APA Domiciles are bound, I signed the document and directed attorney Denison to do the same.

27.     Consistent with the terms of the Stipulation of Settlement, the parties to this case on November 3, 2015, filed an Agreed Motion for Entry of Consent Decree to resolve the case procedurally, with the Stipulation of Settlement as an Exhibit.

28.     Shortly thereafter, General Counsel reported to me that Captain Westbrook and First Officer Wales had informed APA and Domicile counsel Denison that they did not agree with the terms of the Stipulation of Settlement and intended to challenge the settlement in this Court.

5

29.     The APA, however, on behalf of all its Domiciles, including the DFW Domicile,

supports the Stipulation of Settlement and urges the Court to grant the Consent Decree the

parties have moved the Court to grant.


I affirm under penalty of perjury that the foregoing is true and correct.


_____          _____
        11/9/2015                                               *Keith C. Wilson*
Date                                                      Keith Wilson

6

Exhibit A

# CONSTITUTION AND BYLAWS



HOME OFFICE
14600 Trinity Blvd., Suite 500
Ft. Worth, TX  76155-2512
(817) 302-2272

Ratified and Approved by
Allied Pilots Association Membership
November 26, 1963

Amendment #82
Effective: December 26, 2014

## CHANGES MADE TO THE CONSTITUTION AND BYLAWS SINCE LAST AMENDMENT

| ARTICLE, SECTION | PAGE NUMBER | ACTION | CONTENT |
|---|---|---|---|
| Article III, Section 6.C. | 10 | Strike out | Members of the Board of Directors, National Officers, and the Negotiating Committee 4 shall be exempt from paying dues during their term of office. |

This Constitution and Bylaws, Amendment #82, is effective December 26, 2014.


Certified by:      /s/                                    Date:  December 26, 2014
                FO Pam Torell, Secretary-Treasurer


APA Seal



## PREAMBLE

This Constitution and Bylaws of the Allied Pilots Association is hereinafter set forth to provide the mechanism whereby the collective and individual rights of the pilots in the APA are safeguarded through a formula for sound leadership and, at the same time, retention of control of the APA by the membership.

## AMENDMENT DATES

| | |
|---|---|
| September 23, 1964 | February 25, 1999 |
| March 16, 1966 | October 31, 1999 |
| April 22, 1970 | January 22, 2000 |
| May 1, 1972 | May 4, 2000 |
| October 18, 1974 | July 21, 2000 |
| October 31, 1975 | September 29, 2000 |
| April 20, 1979 | February 16, 2001 |
| October 3, 1979 | May 20, 2001 |
| March 20, 1981 | July 13, 2001* |
| April 28, 1981 | March 19, 2002 |
| September 13, 1982 | May 18, 2002 |
| March 22, 1983 | November 8, 2002 |
| March 19, 1987 | April 16, 2003 |
| September 18, 1987 | May 18, 2003 |
| December 4, 1987 | November 20, 2003 |
| March 17, 1989 | February 7, 2004 |
| April 5, 1989 | June 12, 2004 |
| September 20, 1989 | November 18, 2004 |
| March 20, 1990 | February 12, 2005 |
| February 27, 1991 | May 6, 2005 |
| March 26, 1991 | July 26, 2005 |
| July 3, 1991 | November 2, 2005 |
| September 24, 1991 | June 7, 2006 |
| January 23, 1992 | May 11, 2007 |
| April 24, 1992 | November 9, 2007 |
| July 1, 1992 | February 28, 2008 |
| July 24, 1992 | February 12, 2009 |
| December 29, 1992 | May 28, 2009 |
| February 7, 1993 | January 1, 2010 |
| June 16, 1993 | January 3, 2010 |
| October 26, 1993 | December 25, 2010 |
| March 27, 1994 | June 26, 2011 |
| June 9, 1994 | March 7, 2012 |
| January 26, 1995 | June 16, 2012 |
| June 29, 1995 | March 8, 2013 |
| October 22, 1995 | April 27, 2013 |
| January 24, 1996 | June 27, 2013 |
| January 31, 1998 | October 11, 2013 |
| May 17, 1998 | November 20, 2013 |
| June 1, 1998 | April 24, 2014 |
| August 7, 1998 | August 2, 2014 |
| October 14, 1998 | December 26, 2014 |

*Rewrite – effective immediately

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................... 1
ARTICLE I          GENERAL ........................................................................................... 3
   SECTION 1.     NAME .............................................................................................. 3
   SECTION 2.     HOME OFFICE LOCATION ................................................................ 3
   SECTION 3.     DURATION ........................................................................................ 3
   SECTION 4.     GOVERNMENT ................................................................................. 3
   SECTION 5.     GOVERNING BODIES ....................................................................... 4
   SECTION 6.     PARLIAMENTARY LAW AND RULES OF ORDER .............................. 4
   SECTION 7.     FISCAL YEAR ................................................................................... 4
   SECTION 8.     AUTHORIZATION OF MONETARY OBLIGATIONS ............................. 4
   SECTION 9.     SEAL ................................................................................................ 5
   SECTION 10.    SENIORITY DEFENSE FUND ............................................................. 5
ARTICLE II         OBJECTIVES AND RIGHTS OF APA .................................................... 5
ARTICLE III        MEMBERSHIP ..................................................................................... 7
   SECTION 1.     QUALIFICATIONS ............................................................................. 7
   SECTION 2.     CLASSES OF MEMBERSHIP .............................................................. 7
   SECTION 3.     APPLICATION AND APPROVAL FOR MEMBERSHIP .......................... 8
   SECTION 4.     MEMBERSHIP CREDENTIALS ........................................................... 8
   SECTION 5.     MEMBERSHIP STATUS ..................................................................... 9
   SECTION 6.     DUES ................................................................................................ 9
   SECTION 7.     MEMBERSHIP RIGHTS AND OBLIGATIONS .................................... 11
ARTICLE IV         NATIONAL OFFICERS ....................................................................... 12
   SECTION 1.     OFFICERS DEFINED ........................................................................ 12
   SECTION 2.     ELIGIBILITY ................................................................................... 12
   SECTION 3.     SALARY ......................................................................................... 12
   SECTION 4.     NOMINATIONS FOR NATIONAL OFFICE ........................................ 12
   SECTION 5.     NATIONAL OFFICE ELECTION PROCEDURES ................................ 13
   SECTION 6.     ELECTION APPEALS ....................................................................... 14
   SECTION 7.     TERMS OF NATIONAL OFFICE AND VACANCIES ............................ 14
   SECTION 8.     DUTIES OF NATIONAL OFFICERS .................................................. 14
   SECTION 9.     RECALL OF OFFICERS .................................................................... 16
ARTICLE V          BOARD OF DIRECTORS .................................................................... 16
   SECTION 1.     AUTHORITY OF THE BOARD ........................................................... 16
   SECTION 2.     REPRESENTATION .......................................................................... 16
   SECTION 3.     MEETINGS ...................................................................................... 17
   SECTION 4.     VOTING .......................................................................................... 17
   SECTION 5.     QUORUM ........................................................................................ 18
ARTICLE VI         DOMICILES ...................................................................................... 18
   SECTION 1.     OFFICERS DEFINED ........................................................................ 18
   SECTION 2.     ELIGIBILITY ................................................................................... 18
   SECTION 3.     DOMICILE NOMINATIONS AND ELECTIONS .................................. 18
   SECTION 4.     SCHEDULE OF DOMICILE ELECTIONS, TERMS OF OFFICE, AND VACANCIES ........................ 20
   SECTION 5.     ELECTION APPEALS ....................................................................... 20
   SECTION 6.     DUTIES OF DOMICILE OFFICERS .................................................... 21
   SECTION 7.     RECALL OF DOMICILE OFFICERS ................................................... 21
ARTICLE VII        HEARING AND DISCIPLINARY PROCEDURES .................................... 21
ARTICLE VIII       EXPENSES ........................................................................................ 25
ARTICLE IX         BONDING AND INDEMNIFICATION ................................................... 25
   SECTION 1.     BONDING ........................................................................................ 25
   SECTION 2.     INDEMNIFICATION ......................................................................... 25
ARTICLE X          CONFLICTS OF INTEREST ................................................................. 25
ARTICLE XI         COMMITTEES .................................................................................... 28
ARTICLE XII        NEGOTIATIONS AND AGREEMENTS .................................................. 28
ARTICLE XIII       AMENDMENTS .................................................................................. 29
APPENDIX A ............................................................................................................... 31
CODE OF ETHICS ......................................................................................................... 31
APPENDIX (B1) ........................................................................................................... 33

CONFLICT OF INTEREST DISCLOSURE FORM.................................................................................33
APPENDIX (B2) ......................................................................................................................................34
AGENDA DISCLOSURE STATEMENT.................................................................................................34
INDEX            ................................................................................................................................. 35

## ARTICLE I      GENERAL

### Section 1.      Name

The name of the organization shall be the ALLIED PILOTS ASSOCIATION.  Whenever the term "APA" is used, it shall refer to and mean the ALLIED PILOTS ASSOCIATION.

### Section 2.      Home Office Location

The general office and headquarters of the APA shall be at 14600 Trinity Boulevard, Suite 500, Ft. Worth, Texas 76155-2512. *(10/14/98)*  The headquarters may be changed by action of the Board of Directors in accordance with the applicable provisions of this Constitution and Bylaws. *(On 4/22/70 location changed from New York, New York to Arlington, Texas; on 9/22/87 moved from Arlington, Texas to Grand Prairie, Texas; on November 9, 1998 moved from Grand Prairie, Texas to Fort Worth, Texas.)*

### Section 3.      Duration

A.      The duration of the APA shall be perpetual, or until it is dissolved as provided for in the Constitution and Bylaws.  In the event of dissolution of the APA, the officers of the Association shall act as agents for the membership and dispose of all of the physical assets of the APA by suitable means.  All of the liquid assets shall then be prorated to the active members on record in good standing of the APA at the time of such dissolution in proportion to the monies then being paid by such members, less any indebtedness; provided that any amounts that may be paid to the APA for insurance or other benefits shall be dealt with separately and prorated only to those members who contributed to such funds, and in proportion to their individual contributions.

B.      APA may also be dissolved through an affiliation or merger pursuant to a representation vote conducted by the National Mediation Board under the Railway Labor Act or pursuant to Article XII, Section D.   Until such time as the NMB requires an election or the Board of Directors decides affirmatively through a two-thirds (2/3) vote to pursue an affiliation or merger, APA money or property may not be used to encourage or facilitate such affiliation or merger.   *(02/07/2004)*

### Section 4.      Government

A.      This Constitution and Bylaws shall be the supreme law of APA.  This Constitution and Bylaws establishes APA as a two-tiered labor organization consisting of domiciles and a national union. As set forth in, and only insofar as consistent with, this Constitution and Bylaws, the National Officers direct the day-to-day affairs of APA subject to review and direction by the Board of Directors, which has the authority to alter, amend and add to this Constitution and Bylaws. As such, the Board of Directors has the legal authority of a constitutional convention as a result of the authority set forth in Article XIII.  *(09/15/2010)*

B.      The Board of Directors shall approve a Policy Manual for the Allied Pilots Association which will provide the mechanism whereby the collective and individual rights of the pilots in the APA are safeguarded through a formula for sound leadership and, at the same time, retention of control of the APA by the membership.  All Association officers, committee members, agents, and employees are obligated to be aware of, understand, and conduct themselves consistent with the policies contained therein.  The policies contained therein apply to the Board of Directors, even when the Board is in

session.  The Board of Directors does have the authority to alter the Policy Manual at any time or to deviate from the Policy Manual according to the following standards:

1. The Board may vote, by simple majority, to take an action (or actions) that either explicitly or implicitly deviate(s) from the Policy Manual. *(6/07/2006)*
2. The Board may vote, by a two-thirds (2/3) majority, to make a permanent change to the Policy Manual. *(06/07/2006)*

At any time the Board takes either of the above actions, the membership will be informed within 24 hours using the APA Information Hotline.  Such notice will describe the nature of the change or the deviation.  Further, the specific substance of the change or deviation will be made electronically available within seven (7) days. *(09/29/2000*

## Section 5.     Governing Bodies

The governmental powers of the APA shall be vested in the Board of Directors and the National Officers in accordance with the laws provided herein.  The final control of the APA shall be vested in the membership.

## Section 6.     Parliamentary Law and Rules of Order

All questions on parliamentary law and rules of order which are not provided for in the Constitution and Bylaws or Policy Manual shall be decided according to the principles set forth in the current *Robert's Rules of Order.  (06/12/2004)*

## Section 7.     Fiscal Year

The fiscal year of the Association shall be from July 1 to the following June 30.

## Section 8.     Authorization of Monetary Obligations

All bills payable, notes, checks or other negotiable instruments of APA shall be made in the name of the APA and shall be signed by one of the following four persons:  APA President, APA Vice President, APA Secretary-Treasurer, or APA Director of Finance.  Other than regularly occurring payroll checks, all bills payable, notes, checks or other negotiable instruments of APA in excess of $5,000 shall require two of these signatures to lawfully authorize the payment.  The Secretary-Treasurer should be the second signatory on all checks over $5,000.  Under normal circumstances, the President may delegate his check signing responsibilities to the Director of Finance.  The President shall be provided each month a summary of non-recurring checks issued in amounts greater than $5,000.  The President, Secretary-Treasurer, or APA Director of Finance may each, from time to time, transfer such sums of money to administrative accounts, including payroll accounts, petty cash accounts, and such other accounts as may be necessary to meet administrative and current obligations of the Association, and the President and Secretary-Treasurer may each designate a surrogate, who shall be bonded in an amount consistent with the amount of funds over which he may have control, to sign checks for and draw upon such administrative accounts.  No officer, agent, or employee of the APA acting singly or jointly with others shall have the power to make any bills payable, notes, checks, drafts, warrants, or negotiable instruments of any description or nature or endorse the same in the name of the APA or contract or cause to be contracted any debt or liability in the name of or on behalf of the APA except as expressly prescribed and provided in this Constitution and Bylaws. *(06/12/2004)*

**Section 9.     Seal**

The official Seal of the Allied Pilots Association shall be:   *(02/06/98)*



The official Logo of the Allied Pilots Association shall be*: (02/06/98)*



**Section 10.     Seniority Defense Fund**

The Trust Agreement of the Allied Pilots Association Seniority Defense Fund shall not be under the legal control of the Allied Pilots Association as of the Irrevocability Date that is set forth and defined in the Trust Agreement.  If the Fund is still in existence on the Irrevocability Date, the Directors of that Fund shall have exclusive authority over those funds pursuant to the terms of the Trust Agreement.  *(02/28/2008)*

**ARTICLE II     OBJECTIVES AND RIGHTS OF APA**

A.     To operate a non-profit employee-representing association, a labor union. *(03/29/2002)*

B.     To protect the individual and collective rights of the members of the APA and to promote their professional interests, including timely prosecution of individual and collective grievances.

C.     To establish and to exercise the right of collective bargaining for the purpose of making and maintaining employment agreements covering rates of pay, rules, and working conditions for the members of the APA and to settle promptly disputes and grievances which may arise between such members and their employer. APA maintains the right to resolve institutional

and individual grievances in its sole discretion as the collective bargaining representative of the pilots. *(11/20/2003)*

D.   To determine and negotiate and to continue to improve the rates of compensation, benefits, pensions, hours of employment and working conditions, and to maintain uniform principles of seniority and the perpetuation thereof.

E.   To achieve full retroactivity and full pensionability for all improvements in pay from the amendable date of the previous agreement through the date of signing of a new agreement.

F.   To sponsor and support the passage of legislation and appropriate regulations affecting membership and the industry which may be beneficial to the profession or to the industry.

G.   To safeguard with ceaseless vigilance, the safety of scheduled air transportation in recognition of the high degree of public trust, confidence and responsibility placed on the members. *(10/31/99)*

H.   To further scheduling with safety in any practical manner.  *(10/31/99)*

I.   To disseminate information in any manner to enhance the professional status of the membership and to ensure a fully informed membership.  A fundamental principle of APA's ability to effectively represent the interests of its membership is protecting APA's right to communicate with the membership without restriction or outside approvals.  Therefore, no APA officer, committee member or staff employee shall agree to or participate in a communications "blackout" or other restriction of the flow of information from APA to the membership including proposals presented by APA or management during negotiations.

J.   To levy dues and assessments upon the membership with which to provide the funds necessary to carry on the business and objectives of the Association.

K.   To purchase, hold, acquire, lease, mortgage, and convey real estate and personal property of every kind, nature, and description, in any state, the District of Columbia, and any territory or possession of the United States, for the convenient conduct and execution of the Association's business, including the purchasing, leasing, and maintaining of equipment, buildings, and improvements which may be necessary, directly or indirectly, in connection with any of the business and objects of the Association.

L.   To maintain Mutual Aid Plans.  *(01/04/87)*

M.   To exchange views and information with other U.S. and international pilot organizations and to cooperate on issues where a mutual benefit is possible, such as safety, collective bargaining, legislative and regulatory matters. *(09/29/2000)*

N.   To do any and all other acts consistent with and in furtherance of the objectives and purposes set forth in this Constitution and Bylaws, including the establishment of such legal entities as necessary to carry out the legitimate objectives and purposes of the Association.  *(10/14/98)*

# ARTICLE III       MEMBERSHIP

## Section 1.       Qualifications

A.     Any person of lawful age and of good moral character who is qualified as a flight deck operating crew member with American Airlines, Inc., who is accruing seniority, furloughed, or on a leave of absence, except for pilots who are employed by American Airlines in a management position for which total compensation is not defined by the collective bargaining agreement; shall be eligible for membership in the APA as hereinafter provided. *(02/28/2008)*

B.     No one except honorary members shall be permitted a membership who is not a holder of a certificate or license required for a flight deck operating crew member's position on an American Airlines' operation. *(06/07/2006)*

C.     No one shall be admitted for membership who has willfully acted as a strikebreaker pilot, or scab pilot, or who has secured or attempted to secure employment rights as a scab pilot during any duly authorized pilot strike.  *(09/24/91)*

## Section 2.       Classes of Membership

A.     Apprentice membership shall be assigned to a probationary flight deck operating crew member upon application and approval by his Domicile Chairman.  Apprentice membership shall terminate upon completion of such member's probationary period. *(02/25/99)*

B.     Active membership shall be assigned to flight deck operating crew members (including Check Airmen) who have completed the probationary period and meet the qualifications set forth in Article III, Section 1A, upon application and approval. *(02/25/99)*

C.     Inactive Membership shall be assigned to flight deck operating crew members (including Check Airmen) who have completed the probationary period and meet the qualifications set forth in Article III, Section 1A, upon application and approval.  Pilots in the following employment statuses shall be eligible for inactive membership:  *(06/07/2006)*

        1.     Furlough
        2.     Medical or Personal Leave of Absence
        3.     Military Leave of Absence
        4.     Pilots not on active flying status with AA concurrently owing back dues.  *(02/28/2008)*

        Inactive Member.   A member in good standing shall automatically be transferred to inactive membership status upon: *(02/25/99)*

        1.     Being furloughed by the Company.
        2.     Being on leave of absence from the Company twelve (12) months after the expiration of paid sick leave, or *(02/07/2004)*
        3.     Being in the United States military forces on continuous active duty in excess of sixty (60) months. *(02/28/2008)*
        4.     When that pilot is not on active flying status with AA and that pilot owes back dues, that pilot will remain on inactive membership status until he/she returns to work at AA.  At that time,

he/she will resume payment of back dues and will be returned to active membership. *(02/28/2008)*

E.      Honorary membership may be conferred upon any individual by action of the Board of Directors.

## Section 3.      Application and Approval for Membership

A.      All applications for membership shall be on a standard form provided by the Secretary-Treasurer. *(11/20/2013)*

B.      Applicants for membership shall be investigated by the Membership Committee. *(06/07/2006)*

C.      Following investigation, each application for membership shall be sent to the respective Chairman and Vice Chairman of the Domicile, which has jurisdiction over the application.  The application for membership shall be approved by the members of the Domicile which has jurisdiction over the application. Such approval shall either take place by membership vote at the next regularly convened Domicile meeting or, at the discretion of the Domicile Chair, via email from the respective Domicile Chair.  In the event the next Domicile meeting is more than 45 days from the date of application or if a vote was not conducted within 45 days of the date of application, the approval shall take place via email from the respective Domicile Chair.  When approval is conducted via email, the email shall be sent to the email address on file at APA for Domicile members eligible to vote and shall present the application(s) and solicit objections. Upon receipt of the email, Domicile members eligible to vote will have 14 days to respond to the Domicile Chair objecting to an application.  An objection, which is sent to the Secretary-Treasurer, Domicile Chair, and Domicile Vice-Chair  must state the reason(s) the member feels a particular applicant should be denied membership.  Upon receipt of an objection, the Domicile Chair or Vice-Chair shall confirm that the email was sent by a Domicile member who is eligible to vote.  Applications which do not receive any objections during the 14 days will be considered approved by the membership.  Applications which receive an objection during the 14 days will be presented and voted on at a regularly scheduled domicile meeting.  An applicant for membership must receive an approval of the majority of those present at the meeting in order to be admitted into membership. *(11/20/2013)*

D.      If an application is not approved by a majority of the membership, the applicant must wait for a period of six (6) months before reapplying for membership.

E.      All former members of APA, regardless of whether they voluntarily resigned their membership or were expelled from membership, shall not be accepted into active or inactive membership unless they follow all the procedures outlined in this Section. *(06/07/2006)*

## Section 4.      Membership Credentials

Every active member of the APA in good standing shall receive a membership card.  The card shall contain thereon the name of the member, and such additional information as may be deemed appropriate and shall be signed by the Secretary-Treasurer of the APA and shall bear the APA seal.  Honorary members, apprentice members, retired members, and inactive members shall receive special membership cards which shall contain thereon the name of the member, and such additional information as may be appropriate and shall be signed by the Secretary-Treasurer and bear the APA seal.

**Section 5.      Membership Status**

A.      A member who accepts a management position for American Airlines for which total compensation is not defined by the collective bargaining agreement will become a nonmember upon assuming that management position. All current Executive Members, as of the 100 day abeyance period of this Constitution and Bylaws amendment (06/07/2008), shall become non members. *(02/28/2008)*

B.      Except as provided in A above, a member in good standing shall remain a member in good standing as long as such member has paid current dues, assessments or other financial obligations due to the Association.  The Secretary-Treasurer shall transfer a member from good to bad standing if such member shall be delinquent in either dues, assessments or other financial obligations due to the Association.  A member will be placed in inactive membership status by the APA Secretary-Treasurer when that member owes back dues and is not on active flying status. *(03/18/2011)*

C.      Only members in good standing shall have the right to vote on matters brought before the membership.  The number of members in good standing of a domicile shall be determined at the time of the commencement of the meeting.  *(02/25/99)*

D.      A member shall be returned to good standing upon the payment of all back dues, assessments, and penalties owing.  Any reinstated member may be required to satisfy medical underwriting standards and pay costs associated with reinstatement to any APA benefits program.  *(03/27/94)*

E.      When a member is in bad standing for six (6) consecutive months the Secretary-Treasurer shall notify such member that unless he pays or makes arrangements to pay all back dues, assessments, and penalties within thirty (30) days he shall be automatically expelled.

F.      The Secretary-Treasurer shall keep an account for all members in good standing, members in bad standing, non-members, retired members, inactive members, etc.  When an inactive member returns to active line flying his account will be reactivated and all new dues and assessments will be charged from the day of his return to line flying. *(02/28/2008)*

G.      Any pilot desiring to terminate his or her membership with the Association must provide notification of such intent in writing by certified mail to the Secretary-Treasurer of the Association. *(05/18/2002)*

**Section 6.      Dues**

A.      A member's obligation for dues and assessments shall commence as of the date of the member's eligibility for active membership.  Active members shall be required to pay dues by employer dues check-off.  Members shall pay dues at the rate of one percent (1%) on current monthly income.  Dues at the rate in effect at the time any such payments are received by the member shall be collected on all contractual pay, including Variable Compensation, cash bonuses, and cash profit sharing.  An exception to this will be all non-cash compensation. *(10/23/97)*

B.      It shall be the duty of the Board of Directors to conduct an annual review of the dues structure of the Association, to determine if the dues structure should be revised.  The meeting at which this annual review occurs, or any Board meeting at which a dues revision occurs, shall be considered an APA convention. *(02/28/2008)*

C.    Dues and assessments not paid on the established due date shall be subject to a ten percent (10%) penalty.  Any member who does not pay dues, assessments, and penalties shall be placed in bad standing.  *(06/09/94)*

D.    Initiation fees and dues will be collected by the Secretary-Treasurer and a record of each member's dues payment history will be maintained.

    1.    Initiation fees and dues for pilots hired by the Company:

        a.    A probationary pilot who applies for membership will not begin paying dues until he or she becomes an active member; however:

            (1)    A probationary pilot who applies for membership during the first ninety (90) days after his or her date of employment will not pay an initiation fee;

            (2)    A probationary pilot who applies for membership after the first ninety (90) days after his or her date of employment will pay a $25.00 initiation fee.

        b.    A pilot who applies for membership after completing a probationary period shall pay a $25.00 initiation fee and begin paying dues as soon as his or her membership application is approved.  He or she shall also be required to pay back dues to the date that he or she became eligible to be an active member plus a ten percent (10%) penalty.

    2.    Initiation fees and dues for pilots who become an employee of the Company as a result of an acquisition and Eagle Flow Through pilots:

        a.    A pilot who applies for membership within ninety (90) days of the date that APA becomes his or her collective bargaining representative will not pay an initiation fee.  Dues commence upon approval of the membership application.

        b.    A pilot who applies for membership more than ninety (90) days after the date that APA becomes his or her collective bargaining representative shall pay a $25.00 initiation fee; however, an Eagle Flow Through pilot who had been an APA member in the past is not required to pay an initiation fee.  Back dues will be collected from the date APA becomes his or her collective bargaining representative plus a ten percent (10%) penalty.

    3.    In any other circumstance in which a pilot becomes employed by the Company other than those listed in E.1 and E.2 above, APA's Board of Directors shall determine whether the initiation fee should be charged and when the dues obligations shall commence.

    4.    Dues are an obligation of the members of the Association.  The Board of Directors must approve any waiver of initiation fees, penalties and or back dues and this will be reported in the official minutes of the Board of Director's meeting. *(02/28/2008) (Paragraphs E.1  & E.2 replaced and E.3 & E.4 added 01/22/2000)*

E.    Starting the earlier of six (6) months prior to the date set forth as an Early Reopener or, in the absence of an Early Reopener, *(02/07/2004)* the Amendable date of a current Basic Collective Bargaining

Agreement, all APA members covered by that agreement shall pay an additional one-half percent (1/2%) dues for expenses directly related to obtaining such agreement. These additional dues shall be accounted for separately, shall be used for expenses incurred after the effective date of additional one-half percent (1/2%) dues, and shall be used only for expenses specifically related to negotiations for that specific Basic Agreement that are above and beyond the normal level of recurring expenses. The APA Board of Directors shall be provided a detailed accounting of receipts and expenditures of the additional dues at each Board meeting, and the Board shall have final authority to decide whether such expenditures should be paid from the additional dues or from the Association's regular dues.

F.      The collection of one-half percent (1/2%) additional dues from the respective members shall cease after a new Basic Collective Bargaining Agreement is ratified and all related arbitrations and other litigation resulting from negotiating the new Basic Collective Bargaining Agreement have been concluded and all such expenses have been paid, or sooner if approved by the Board of Directors. All remaining funds from the additional dues shall be refunded and/or rebated to the respective members as soon as practicable, according to a formula approved by the Board of Directors. *(10/26/93)*

G.      In the event of a bankruptcy by the Company or its parent, and in the event that the one-half percent (½%) dues provided for in Section 6 G. is not being charged at the time of the bankruptcy, all APA members shall pay an additional one-half percent (½%) dues for the expenses related to the bankruptcy proceeding and any related negotiations beginning with the first day of the next pay period following the date of the bankruptcy filing. The APA Board of Directors shall have final authority to decide which expenses are attributable to the bankruptcy and related negotiations and which expenses shall be paid from the Association's regular dues. Moreover, the Board of Directors shall decide when the collection of this one-half percent (1/2%) shall cease and, in the event that more than sufficient funds have been collected to cover the expenses related to a bankruptcy proceeding and the related negotiations, the Board of Directors shall have the discretion to decide the timing and manner in which these funds shall be refunded or rebated to the respective members. *(05/18/2003)*

H.      Assessments may be levied on all members to provide for extraordinary expenses, contingencies, and reserves, provided such assessments are first approved by a two-thirds (2/3) vote of the Board of Directors and ratified by a majority vote of the members voting in a membership vote on the question.

## Section 7.      Membership Rights and Obligations

A.      A member in good standing is entitled to participate actively in all APA activities and is entitled to all of the rights, privileges, and benefits of membership in the APA.

B.      Apprentice and inactive members shall enjoy all the benefits of active membership except the privileges of voting, holding elected office, and participation in Association sponsored programs where specific requirements prohibit such participation. *(10/18/74)*

C.      A member in bad standing shall not have the right to vote, hold office, nor participate in any of the privileges or benefits of active membership, provided, however, that a member's continued participation in an Association-sponsored benefit program shall not be terminated as a result of bad standing membership. *(11/09/2007)*

D.       Voting on matters presented at a domicile meeting shall be restricted to active members in good standing currently occupying a bid status at that domicile. *(02/07/93)*

E.       Members of the Association shall accept and agree to abide by the Constitution and Bylaws of the APA as they are in force or as they may be amended, changed, or modified in accordance with the provisions of this Constitution and Bylaws.

F.       In the event that the Association has discretion to distribute a lump sum payment ("Lump Sum Payment"), which shall be defined by the Board in the Lump Sum Dispute Resolution Procedure, any pilot or group of pilots who wishes to challenge the distribution shall be required to exhaust the Lump Sum Dispute Resolution Procedure. No pilot or group of pilots may take legal action against the Association with respect to any matter that could be addressed in the Lump Sum Dispute Resolution Procedure unless this particular Procedure has been invoked and exhausted by the pilot or group of pilots. *(11/28/12)*

## ARTICLE IV        NATIONAL OFFICERS

### Section 1.      Officers Defined

The National Officers shall be the President, Vice President, and Secretary-Treasurer.

### Section 2.      Eligibility

Only active members in good standing shall be eligible for nomination and election to National office.  A National Officer who retires during a term of office shall vacate that office automatically upon retirement. Any National Officer who is ordered to Active Duty service in the United States military in excess of 90 consecutive days or more than 120 days in any twelve month period will be required to resign his/her office and the vacancy filled in accordance with Article IV, Section 7. *(06/12/2004)*

### Section 3.      Salary

The salary of the President, Vice President, and Secretary-Treasurer shall be as determined by the Board of Directors.

### Section 4.      Nominations for National Office

A.       Any active member in good standing shall be eligible to hold any national office.  *(09/24/91)*

B.       No more than six (6) months prior to the date of the National Officer Election, the Secretary-Treasurer shall establish a schedule for the upcoming election.  The notice of nomination and election, which shall include an election schedule and nomination ballot, shall be posted on the Association website, mailed to the address of record and e-mailed to the e-mail address of record of each member in good standing. *(10/11/2013)*

C.       Any active member in good standing may nominate him or herself or any other active member in good standing for the office of President, Vice President, or Secretary-Treasurer. To be eligible for nomination, the person to be considered shall execute a statement, in a form provided by the Secretary-Treasurer, that he or she will serve if elected. The person shall also execute the Conflict of

Interest Disclosure Form C&B (Appendix B1). These acceptance forms shall be posted on the Association website, mailed to the address of record and e-mailed to the e-mail address of record of each member in good standing with the notice of nomination and election. The name of the nominee and the acceptance forms shall be returned to the Secretary-Treasurer by facsimile; certified mail, return receipt requested; e-mail or hand delivery as indicated in the acceptance forms. A member may also withdraw his or her nomination at any time prior to the date voting commences by notifying the Secretary-Treasurer by facsimile; certified mail, return receipt requested; or e-mail as indicated in the acceptance forms. *(10/11/2013)*

D.      The Secretary-Treasurer shall cause to be distributed to each active member in good standing a list of persons willing to be considered for nomination.  Each member may vote for one (1) person for each office from the list of names provided by the Secretary-Treasurer.  An independent disinterested third party shall be responsible for the counting of the nomination ballots.  *(02/16/2001)*

E.      The three (3) persons who receive the most votes at each domicile for each office shall be considered nominated, and the Secretary-Treasurer shall include their names on the official ballot in alphabetical order.  In the event of a tie for the third place, the tied candidates shall be included on the ballot. *(01/23/92)*

**Section 5.      National Office Election Procedures**

A.      Subject to the supervision of the Secretary-Treasurer, the independent disinterested third party designated pursuant to Section 4.D. shall also be responsible for the distribution, collection, and counting of the election ballots.  The official ballot shall be distributed to all members no less than twenty-one (21) days prior to the date of the vote count. *(05/03/2005)*

B.      The most current Status 1 List shall be used to determine the eligibility of a member to vote in the election. *(06/16/93)*

C.      Each ballot and each vote on the ballot cast by an active member in good standing shall be counted provided that the independent third party is able to determine the intention of the voter with sufficient accuracy.  Blank ballots and write-in votes shall not be counted.  Decisions on whether or how to count a particular ballot or ballots shall be resolved conclusively by the independent third party. *(01/23/92)*

D.      Each candidate is permitted to have an observer at each phase of the election process, subject to the independent third party's policies.  The candidate and any active member in good standing designated by the candidate shall be eligible to act as an observer.  *(02/16/2001)*

E.      The candidate who receives the majority of votes cast for each office shall be deemed elected to that office.  The determination of a majority shall be made with respect to each office following the vote count. *(01/23/92)*

F.      In the event that no candidate receives a majority of votes cast for a particular office, the Secretary-Treasurer shall cause a runoff election to be concluded within sixty (60) days of the prior vote count.  The ballot in the runoff election shall be limited to the two (2) candidates who received the greatest number of votes.  In the event of a tie in a runoff election, one (1) candidate shall be eliminated by the drawing of lots. *(01/23/92)*

**Section 6.      Election Appeals**

The Article VII Appeal Board shall also serve as the Association's internal election appeal body. The Appeal Board shall consider all complaints, protests, or appeal concerning APA elections received via certified mail, return receipt requested, in writing from any member in good standing provided they have been received by the Appeal Board, in care of the APA Legal Department, postmarked within ten (10) business days after the later of the completion of the election or the run-off election. Receipt at the APA Legal Department constitutes receipt by the Appeal Board. Complaints may not be filed prior to the conclusion of an election. The Appeal Board shall issue its written decision as soon as practicable within sixty (60) days from receipt of a written complaint and the election complaint, the Appeal Board decision, and any subsequent decision by the Department of Labor shall be matters of public record available to members of the Association. The Appeal Board shall issue its written finding or decision as soon as practicable within sixty (60) days of receipt of a written protest, complaint, or appeal. (*02/26/2005*)

**Section 7.      Terms of National Office and Vacancies**

A.      Effective with the election of the National Officers for the term beginning July 2001, the term of office for the President, Vice President, and Secretary-Treasurer shall be three (3) years and shall commence on the first day of July, and continue for three (3) years or until he or she is re-elected or a successor has been elected and assumes office in accordance with this Constitution and Bylaws. (*09/29/2000*)

B.      If the results of a runoff election are announced after the first day of July in an election year, the person elected shall assume office immediately. No person may serve more than two (2) consecutive terms (not including partial terms) in the same National Officer position (i.e., President, Vice President, Secretary-Treasurer) after July 1, 1994. Terms served before July 1, 1994 shall not be considered part of the two (2) consecutive term limit. (*02/07/2004*)

C.      In the event of a vacancy in the office of the President, and if the unexpired term is twelve (12) months or less, the Board of Directors, by majority on a one director, one vote basis, shall elect a President. If the unexpired term is more than twelve (12) months, the Board of Directors, by majority on a one director, one vote basis, shall elect a President pro tem to serve until an election can be held to fill the vacancy. (*02/12/2009*)

D.      In the event of a vacancy in the office of Vice President, and if the unexpired term is twelve (12) months or less, the Board of Directors, by majority on a one director, one vote basis, shall elect a Vice President. If the unexpired term is more than twelve (12) months the Board of Directors, by majority on a one director, one vote basis, shall elect a Vice President pro tem to serve until an election can be held to fill the vacancy. (*02/12/2009*)

E.      In the event of a vacancy in the office of Secretary-Treasurer and if the unexpired term is twelve (12) months or less, the Board of Directors, by majority on a one director, one vote basis, shall elect a Secretary Treasurer. If the unexpired term is more than twelve (12) months, the Board of Directors shall, by majority on a one director, one vote basis, elect a Secretary-Treasurer pro tem to serve until an election can be held to fill the vacancy. (*02/12/2009*)

**Section 8.      Duties of National Officers**

A.    President

The President shall conduct the affairs of APA consistent with this Constitution and Bylaws and with the policy and directives set by the Board of Directors. While the President's actions are subject to review by the Board of Directors, the President's actions shall be presumed valid unless the Board of Directors elects to review and disapprove a particular action taken by the President. Such review and disapproval, however, may be taken at any time, and the President shall have the responsibility of keeping the Board of Directors informed about actions taken by him pursuant to this Article IV, Section 8. *(09/15/2010)*

1.    The President shall notify the national and domicile officers of all regular and special meetings of the Board. The President shall appoint and remove, employ and discharge, and fix the compensation of all employees and agents of the APA other than its officers. The President shall have the authority to direct the day-to-day affairs of APA. The employees and agents of APA, and Committee members other than those serving on the Financial Audit Committee and Appeal Board, shall report to the President. *(09/15/2010)*

2.    The President shall sign all notes, checks, drafts or other orders for the payment of money duly drawn by the Secretary-Treasurer consistent with his fiduciary duty under federal law to approve only appropriate and authorized expenditures. The President shall sign any agreement entered into between APA and a third party and, in general, carry out all other duties necessary to the conduct of APA.   The President shall issue an annual report to the membership. *(09/15/2010)*

3.    The President shall enforce the APA Constitution and Bylaws, and he may issue, as necessary, written interpretations of the Constitutional and Bylaws. *(09/15/2010)*

B.    Vice President

The Vice President shall assist the President in the discharge of all duties. He shall also preside when called upon by the President and at times when the President may be temporarily unable to discharge his duties.  In case of removal, resignation, or death of the President, the Vice President shall perform the duties of the President until such time that the APA Board of Directors can meet to fulfill the vacancy procedures as outlined in Section 7 of this Article. *(02/12/2009)*

C.    Secretary-Treasurer

1.    The Secretary-Treasurer shall take charge of all books and effects of the Association.  He shall keep a record of all proceedings at all regular and special meetings of the Board of Directors.  He shall keep a record of all officers and special appointees and maintain all Conflict of Interest Disclosure Statements (C&B Appendix B1) and Agenda Disclosure Statements (C&B Appendix B2).  He shall assist the President in preparing an Annual Report to the members of the Association.  He shall be custodian of the Association Seal and affix the seal when required.  He shall affix his signature to all membership cards.  He shall cause to be kept the Association membership records so as to show at all times the number of members under each classification, their names alphabetically arranged, their respective places of residence, their post office addresses, and the time at which each person became a member of the Association or changed his membership status.  A member may inspect his records or account any time at his request during normal business hours. *(02/16/2001)*

2.  The books and records of the Secretary-Treasurer shall be accessible to any member or group of members in good standing in accordance with Federal law.  He shall be responsible for all funds of the Association, receiving all dues, fees, and special assessments assessed the Association as a group.  He shall keep an accurate record of all expenditures and receipts of the Association.  He shall keep an individual record of all dues and assessment of each member.  He shall prepare and submit under his signature all reports required under law.  He shall present his books at the end of each fiscal year for audit by a certified auditor.  He or his successor will present this audit, together with a current accounting of APA funds, at the next following Board of Directors meeting. *(06/12/2004)*

*(8.D. deleted 11/09/2007)*

## Section 9.    Recall of Officers

A.  The President, Vice President, or Secretary-Treasurer may be recalled and removed from office by action of the membership as follows:

1.  A two-thirds (2/3) majority of the Board of Directors, on a one Director one vote basis (secret ballot), may cause a recall ballot to be sent to the membership on a National Officer.  If a simple majority (50% plus one) of the members voting in a recall ballot (not including apprentice members) vote for a recall, that National Officer shall be recalled and removed from office. *(02/28/2008)*

2.  Thirty percent (30%) of the active membership in good standing (not including apprentice members) may petition the Secretary-Treasurer and cause a recall ballot be taken on any National Officer.  If a majority of the members voting on a recall ballot vote in favor of a recall, that National Officer shall be recalled and removed. *(04/24/2014)*

## ARTICLE V    BOARD OF DIRECTORS

## Section 1.    Authority of the Board

A.  The Board of Directors is the supreme policy making authority within APA, and it has the authority to review and disapprove actions taken by the National Officers; however, absent a specific vote disapproving an action taken by a National Officer, the action shall be presumed valid. *(09/15/2010)*

B.  Members of the Board of Directors are both officers of their domiciles and members of the Board of Directors with the authority set forth in Article XIII to alter, amend or add to this Constitution and Bylaws.  *(09/15/2010)*

## Section 2.    Representation

A.  The Board of Directors shall consist of the Chairman and Vice Chairman from each domicile, where a majority of pilots' bid status are awarded solely on the basis of seniority alone and are open to all pilots on the AA seniority list, except that domiciles having one hundred (100) or less members shall have one (1) representative (Chairman).  *(07/21/2000)*

B.     Domiciles not meeting the criteria of A.1. above, shall be represented by the geographically closest APA domicile, in existence as of June 1, 2000. *(07/21/2000)*

C.     Pilots assigned to a Home Base, as defined in the 2012 AA/APA CBA Section 18, shall be represented by the geographically closest APA domicile in existence at the time of opening of the Home Base. *(06/27/2013)*

D.     Members of a base represented by geographically closest APA domicile have the right to run for elective office in the base that represents them. *(07/21/2000)*

**Section 3.     Meetings**

The Board of Directors shall convene for the transaction of business at least twice a year on a date and at a location determined by the President.  Special meetings of the Board of Directors may be called by the President or will be called within fourteen (14) days upon the written request of thirty percent (30%) of the Board of Directors.

In addition, a majority of the BOD may call and determine the inclusive dates, location and agenda of a special BOD meeting by making notice of such in writing to the national office. There shall be no restrictions as to lead time if requested by the BOD. There is no requirement for a National Officer to be in attendance at a special BOD meeting if that attendance is not desired by the BOD. This by no means precludes attendance under normal circumstances. *(01/17/2013)*

There shall be no restrictions on business conducted at any meeting of the Board of Directors, provided, however, that no business shall be acted upon without:

A.     Ten (10) days notice of the agenda in writing to all members of the Board prior to such meeting; or

B.     Approval of seventy-five percent (75%) of the Board of Directors.

**Section 4.     Voting**

A.     All issues shall be decided by a majority vote of the Board of Directors except as may otherwise be provided in this Constitution and Bylaws.

B.     Each member of the Board shall be entitled to vote fifty percent (50%) of the active members in good standing at his domicile provided that the representative from a domicile having one hundred (100) or less members shall be entitled to one (1) vote for each active member in good standing at his domicile. Fractional votes will be counted.

C.     At a meeting of the Board of Directors, in the absence of a Domicile Chairman or Vice Chairman, a duly designated (not proxy) representative (DDR) from such domicile possessing authorization from the absent Chairman or Vice Chairman shall have and exercise all rights and privileges as a member of the Board of Directors at such meeting.  An exception to this paragraph can occur when a newly elected Officer who has not yet taken Office is serving as DDR while the incumbent Officer remains in attendance. *(02/16/2001)*

D.     Proxy voting will be allowed at all duly-convened Board meetings within the APA provided that: *(03/26/91)*

    1.     Proxies are in writing.

    2.     Proxies may not be given when the duly elected officer or duly designated representative is personally present.  *(10/03/79)*

    3.     Proxies may not be used in any vote by secret ballot.

## Section 5.     Quorum

The quorum of the Board of Directors at all meetings, whether Special or Regular, shall be a majority of the Domicile Chairmen and Vice Chairmen or their Duly Designated Representatives (DDR), not proxy, from such domicile possessing authorization from the absent Chairman or Vice Chairman. *(09/29/2000)*

## ARTICLE VI      DOMICILES

## Section 1.     Officers Defined

The Domicile Officers shall be Chairman and Vice Chairman.

## Section 2.     Eligibility

Only active members in good standing shall be eligible for nomination and election to Domicile office.  A Domicile Officer who retires during a term of office shall vacate that office automatically upon retirement. A Domicile Officer may hold office only at his/her domicile. Any Domicile Officer who is ordered to Active Duty service in the United States military in excess of 90 consecutive days or more than 120 days in any twelve month period will be required to resign his/her office and the vacancy filled in accordance with Article VI, Section 4. *(06/12/2004)*

## Section 3.     Domicile Nominations and Elections

A.     At least seventy-five (75) days prior to the dates established in Section 4.A. of this Article VI, the Secretary-Treasurer shall post on the Association website, mail to the address of record and e-mail to the e-mail address of record of each member in good standing of the domicile a notice of nomination and election, which shall include an election schedule and nomination ballot. (10/11/2013)

B.     Any active member in good standing at the domicile shall be eligible to hold any domicile office. Any active member in good standing at the domicile may nominate himself or herself or any other active member in good standing at the domicile for the office of Domicile Chairman or Domicile Vice Chairman. To be eligible for nomination, the person to be considered shall execute a statement, in a form provided by the Secretary-Treasurer, that he or she will serve if elected. The person shall also execute the Conflict of Interest Disclosure Form (C&B Appendix B1). These acceptance forms shall be posted on the Association website, mailed to the address of record and e-mailed to the e-mail address of record of each member in good standing with the notice of nomination and election. The name of the nominee and the acceptance forms shall be returned to the Secretary-Treasurer by facsimile, certified mail, return receipt requested, e-mail or hand delivery as indicated in the

acceptance forms. A member may also withdraw his or her nomination at any time prior to the date voting commences by notifying the Secretary-Treasurer by facsimile, certified mail, return receipt requested, or e-mail as indicated in the acceptance forms. *(10/11/2013)*

C.    The Secretary-Treasurer shall cause to be distributed to each active member in good standing at the domicile a list of persons willing to be considered for nomination. Each member may vote for one (1) person for each office from the list of names provided by the Secretary-Treasurer. The most current Status 1 List shall be used to determine the eligibility of a member to vote in the election. *(06/16/93)*

D.    Subject to the supervision of the Secretary-Treasurer, the independent disinterested third party designated pursuant to Article IV, Section 4.D. shall also be responsible for the administration of nominations and elections. The official ballot shall be made available to all members no less than twenty-one (21) days prior to the respective dates of the vote count. *(02/28/2008)*

E.    The three (3) persons who receive the most votes for each office shall be considered nominated, and the independent third party shall forward their names to the Secretary-Treasurer. Subject to the Secretary-Treasurer's supervision, the ballots will then be made available by the independent third party for election of candidates. In the event of a tie for the third place, the tied candidates shall be included on the ballot. *(02/16/2001)*

F.    The candidate who receives the majority of the votes cast for each office shall be deemed elected to that office. The determination of a majority shall be made with respect to each office following the vote count. *(02/07/93)*

G.    In the event that no candidate receives a majority of votes cast for a particular office, the Secretary-Treasurer shall cause a run-off election to be concluded within sixty (60) days of the prior vote count. The ballot in the run-off election shall be limited to the two (2) candidates who received the greatest number of votes. In the event of a tie in a run-off election, one (1) candidate shall be eliminated by the drawing of lots. *(02/07/93)*

H.    In the event of a tie for a particular office, the Secretary-Treasurer shall cause a run-off election to be concluded within sixty (60) days of the prior vote count. The ballot in the run-off election shall be limited to the candidates who tied for a particular office. In the event of a tie in a run-off election, a candidate(s) shall be eliminated by the drawing of lots. *(07/24/92)*

I.    Each candidate is permitted to have an observer at every phase of the election process, subject to the independent third party's policies. The candidate and any active member in good standing of the domicile designated by the candidate shall be eligible to act as observer. *(02/16/2001)*

J.    Each ballot and each vote on the ballot cast by an active member in good standing of the domicile shall be counted, provided the independent third party is able to determine the intention of the voter with reasonable accuracy. Blank ballots and write-in votes shall not be counted. Decisions on whether or how to count a particular ballot or ballots shall be resolved conclusively by the independent third party. *(02/16/2001)*

K.    Challenges to the conduct of the election and complaints about how ballots were counted shall be resolved pursuant to the procedure set forth in Section 6. *(07/24/92)*

**Section 4.        Schedule of Domicile Elections, Terms of Office, and Vacancies**

A.      The term of office of the Domicile Chairman and Vice Chairman shall be for a period of twenty-four (24) months.  Domiciles shall be divided into four (4) categories, and the division shall be published in the APA Policy Manual.  Terms of office will begin according to the following dates and shall continue until the last day of the twenty-fourth month thereafter. *(04/16/2003)*

    1.      Category A:  The first day of November in even-numbered years.
    2.      Category B:  The first day of May in odd-numbered years.
    3.      Category C:  The first day of May in even-numbered years.
    4.      Category D:  The first day of November in odd-numbered years. *(05/18/2002)*

B.      No person may serve more than four (4) consecutive terms (not including partial terms) as a member of APA's Board of Directors after November 1, 1992.  Terms served before November 1, 1992 shall not be considered part of the four- (4) year consecutive term limit. In order to ensure the Board of Directors always remains fully constituted, a Duly Designated Representative will be appointed to temporarily fill a vacant seat on the Board of Directors until such time as the appropriate election process is concluded.  If the vacancy is created as a result of a resigning or retiring Domicile Officer, the resigning or retiring Domicile Officer will appoint the Duly Designated Representative prior to resigning or retiring.  If the vacancy is created by other means, or if the resigning or retiring Domicile Officer fails to appoint a Duly Designated Representative, the remaining Domicile Officer will appoint the Duly Designated Representative.  If there is no other Domicile Officer to make the appointment, the President will appoint a pilot from the domicile to be the Duly Designated Representative. *(02/25/99)*

C.      In the event of a vacancy in the office of Domicile Chairman or Vice Chairman, if the unexpired term is more than six (6) months, an election shall be held to fill the vacancy utilizing the procedures specified in Section 4 of this Article VI.  If the unexpired term is six (6) months or less, an election shall be held at a domicile meeting provided that a notice is mailed to each domicile member at least twenty (20) days prior to the election informing the member of the date, time, and place of the election and a listing of the office or offices to be filled. *(04/24/92)*

D.      When a Domicile loses eligibility for a Vice Chairman because the number of active members in good standing at the Domicile fall below the number required by Article V, Section 1.A. of the Constitution and Bylaws, the following will apply: *(05/11/2007)*

Effective with the date that the status falls below that required, the Secretary-Treasurer shall notify the Chairman and Vice Chairman of the affected Domicile that the Domicile has become ineligible for a Vice Chairman representative until such time as the active members in good standing increases to the required number.  If the active membership increases to the required number, the Vice Chairman will be reinstated for the remainder of the elected term.  If the elected term is expired, there will be an election according to Article VI, Section 4. *(06/12/2004)*

**Section 5.        Election Appeals**

The Article VII Appeal Board shall also serve as the Association's internal election appeal body.  The Appeal Board shall consider all complaints, protests, or appeal concerning APA elections received via certified mail, return receipt requested, in writing from any member in good standing provided they have been received by the Appeal Board, in care of the APA Legal Department, postmarked

within ten (10) business days after the later of the completion of the election or the run-off election. Receipt at the APA Legal Department constitutes receipt by the Appeal Board. Complaints may not be filed prior to the conclusion of an election. The Appeal Board shall issue its written decision as soon as practicable within sixty (60) days from receipt of a written complaint and the election complaint, the Appeal Board decision, and any subsequent decision by the Department of Labor shall be matters of public record available to members of the Association. The Appeal Board shall issue its written finding or decision as soon as practicable within sixty (60) days of receipt of a written protest, complaint, or appeal. *(02/26/2005)*

**Section 6.      Duties of Domicile Officers**

A.     *Chairman.*  It shall be the duty of the Chairman to call and preside at all meetings of the domicile, to preserve order during its deliberations; to appoint all committees not otherwise ordered by the domicile; to authorize expenditure of the domicile's governing funds; to enforce the Constitution and Bylaws; to supervise the activities of the domicile; to supply the Board of Directors with any information it may desire and to carry out all directives from the Board of Directors.

B.     *Vice Chairman.*  The Vice Chairman shall perform the duties of the Chairman in the absence of that officer and in case of the removal, resignation, or death of that officer until an election is held in accordance with Article VI, Section 4.  He shall also preside when called upon by the Chairman and at times when the Chairman may be temporarily unable to discharge his duties.  The Vice Chairman shall assist the Chairman at all times in the discharge of all duties.

**Section 7.      Recall of Domicile Officers**

Thirty percent (30%) of the active membership in good standing of the domicile (not including apprentice members) may petition the Secretary-Treasurer and cause a recall ballot to be taken on a Domicile Officer of the domicile. If a majority of the members of the domicile voting on a recall ballot vote in favor of a recall, that Domicile Officer shall be recalled and removed. *(04/24/2014)*

## ARTICLE VII      HEARING AND DISCIPLINARY PROCEDURES

A.     Any member is subject to disciplinary action, including but not limited to fines, placing a member in bad standing, suspension, or expulsion for any of the acts listed below. Charges filed under this Article for the purpose of resolving or pursuing intra-union political disputes shall not be actionable under this Article. *(09/23/2009)*

1.     Willfully acting as a strike-breaker (scab) pilot during any duly authorized pilot strike, as determined by the striking authority;

2.     Willful violation of this Constitution and Bylaws;

3.     Willful neglect in paying dues, assessments, or fines levied by the Association;

4.     Misappropriating money or property of the Association;

5.     Willful violation of a pilot's working agreement;

6.  Initiating and/or prosecuting charges under this article in bad faith (for example, malicious or frivolous charges) against another APA member;

7.  Any act contrary to the best interests of the APA as an institution or its membership as a whole.

8.  Any act motivated by malice or political animus that exposes another member to company discipline, up to and including termination. *(09/23/2009)*

L.  **Charges**

All charges shall be preferred in writing by submitting the charges to the APA Secretary-Treasurer by certified mail, return receipt requested.  The charges shall be specific as to the alleged acts that constitute the basis for the charges with citations to the particular provision of the Constitution and Bylaws that have been violated.  The accused member shall be supplied with a copy of the charges, by certified mail, return receipt requested, at his or her last known address.  The Secretary-Treasurer is charged with distribution of the charges to the Domicile Officers and the Appeal Board.

1.  Charges may be brought under this Article by any member in good standing against any other member. *(09/23/2009)*

2.  Except for charges filed in accordance with Section A.1 and A.8. of this Article, charges must be filed within one (1) year after the alleged offense.  Charges under Section A.1 may be applied retroactively to conduct which occurred prior to becoming an APA member.  Absent extreme mitigating circumstances, expulsion is mandatory for a violation of Section A.1.  Charges filed in accordance with Section A.8. of this Article must be filed within one (1) year, or one (1) year from the issuance of the Arbitrator's award in the related grievance, if applicable.  The Appeal Board shall delay the hearing of charges filed under A.8. of this Section until the issuance of the Arbitrator's award in the related grievance, if applicable. *(09/23/2009)*

3.  Article VII proceedings shall be scheduled and conducted so as to minimize the cost to the Association and its membership.   All mailed notices and written submissions, including decisions and appeals shall be sent by certified mail, return receipt requested, to the Secretary-Treasurer, who is charged with expeditious distribution of the submissions to the relevant parties and to the Appeal Board in the event they have not been served with the documents pursuant to the provisions of this Article VII.  In the event that a party refuses to accept a certified mailing, he or she shall be deemed on notice of the contents of the document.

C.  **Domicile Hearing**

1.  Unless otherwise provided for in this Article VII, the charges shall be considered by the accused member's Domicile Officers in the first instance.  The Domicile Officers are first charged with determining whether the charges as submitted set forth a claim cognizable under this Article VII.   If the Domicile Officers determine that the charges state a cognizable claim, the Domicile Officers shall hold a hearing, if either the accused or the accuser requests one, or at their discretion, if neither party requests a hearing.   No hearing shall be convened unless the accused and the accuser have been given written notice at least twenty (20) days before

the hearing.  In the event that one of the Domicile Officers recuses him or herself, the remaining Domicile Officer shall act alone.  *(09/23/2009)*

2.      In the event of a hearing, both the accused member and the accuser shall have the right to be represented by a member in good standing.  If the accuser or the accused fails to appear at a scheduled hearing, he or she shall be deemed to have waived his or her right to an appeal from the decision of the Domicile Officers, unless the Appeal Board finds that good cause is shown for the failure to appear at the hearing.

3.      At the Domicile Hearing, a court reporter will be present and will record a transcript of the hearing and swear the witnesses.  This cost will be borne by the Association.  Both the accused and the accuser shall be provided with a copy of the transcript at the Association's expense. *(09/23/2009)*

4.      A decision on the charges will be published within the later of thirty (30) days after the hearing or thirty (30) days after receipt of the transcript.  The decision shall be in writing and sent by certified mail, return receipt requested, to the Secretary-Treasurer. *(09/23/2009)*

D.      **Appeal Board**

1.      An Appeal Board shall be established to hear or review cases referred to it in accordance with this Constitution and Bylaws.  This Appeal Board shall comprise three (3) regular and two (2) alternate members in good standing, appointed by the Board of Directors.

2.      The term of office for such members shall be for two (2) years or until their successors have been selected.

3.      Either the accused or the accuser may appeal the decision of the Domicile Officer(s) to the Appeal Board. An appeal of the decision by the Domicile Officer(s) must be made within thirty (30) days after receipt by the accused or the accuser of the decision of the Domicile Officer(s).

4.      Should the accused or the accuser be a Domicile Officer, then such charges shall be considered by the Appeal Board in the first instance.  When accused members from more than one domicile are charged with substantially the same offense, such charges shall be considered by the Appeal Board in the first instance.  Such charges should be filed in writing with the Secretary Treasurer. *(09/23/2009)*

5.      The President shall have the authority, in consultation with General Counsel, to enforce the Terms and Conditions of the Acceptable Use Policy ("AUP") established for the APA Web site and its subparts ("System") on behalf of the Association by removing postings, and/or suspending or revoking a member's access in whole or in part to the System for a period no longer than fourteen (14) business days.  A member's right of access to the System or any subpart(s) shall not be revoked or suspended unless the President, in consultation with General Counsel, determines that such action is necessary for APA to comply with its legal or contractual obligations or to protect the integrity of the System. The President shall promptly provide the member, by e-mail or otherwise, with specific reasons for such actions.  In the event that the President removes a member's posting, the member may contest such action by

filing an appeal with the Appeal Board, subject to the procedures specified in VII.D.  In the event that the President restricts a member's access to the System, this restriction shall be subject to mandatory review by the Appeal Board via the procedures specified in VII.D. for Article VII proceedings.  This review shall be conducted and a decision rendered by the Appeal Board within the fourteen (14) business days specified above.  In the event that the Appeal Board determines that a member's access has been restricted for cause, the Appeal Board shall determine the ultimate duration and the extent of the restriction.  The Appeal Board's decision may be appealed to the Neutral Arbitrator in accordance with the procedures set forth in VII.E.  *(09/23/2009)*

6.    When the Appeal Board holds a formal hearing, both the accused and accuser shall have the right to be represented by a member in good standing.

7.    The Appeal Board may decide that the charges as set forth by the accuser fail to state a cognizable claim.  The Appeal Board will then dismiss the claim, via a written opinion.  If the Appeal Board determines that the charges state a cognizable claim, the Appeal Board shall hold a hearing, if either the accused or the accuser requests one, or at its discretion, if neither party requests a hearing.  *(09/23/2009)*

8.    Unless otherwise provided, the Appeal Board shall give thirty (30) days notice of all hearings. A court reporter shall record, transcribe the hearing and swear the witnesses.

9.    The Appeal Board shall issue its decision no later than sixty (60) days from the date that the Appeal Board obtains jurisdiction over the case, either by appeal or by assuming or obtaining original jurisdiction.  In the event of a hearing, the sixty (60) days shall run from the date of receipt of the transcript.  The decision shall be in writing and sent by certified mail, return receipt requested, to the parties and to the Secretary-Treasurer.

10.   The fees and expenses of the Appeal Board shall be the responsibility of APA, unless the Appeal Board determines that a party to the proceeding has repeatedly acted in bad faith in the prosecution or the defense of the charges, in which case the Appeal Board shall have the authority to impose some or all of the costs and fees associated with the Article VII proceeding on the offending party.

## E.  Neutral Arbitrator

1.    Appeals of decisions made by the Appeal Board may be submitted to a Neutral Arbitrator by filing a written appeal to the Secretary-Treasurer within thirty (30) days of receipt of the decision by the Appeal Board. In the event of an appeal all sanctions, penalties, or fines imposed by the Appeal Board shall be stayed, pending the Arbitrator's award. *(09/23/2009)*

2.    The Neutral Arbitrator shall be rotated among a list of approved neutrals.  The list of neutrals shall consist of a pool of three to five arbitrators familiar with, and experienced in, matters involving union affairs.  The Appeal Board, in consultation with APA Legal, shall compile this list every five (5) years.  The list of neutrals must be approved via majority vote of the Board of Directors. *(09/23/2009; amended 6/21/2011)*

3.    The Arbitrator shall hold a hearing as soon as practicable.  A court reporter shall be present at the hearing in order to swear witnesses and record a transcript. Both the accused and the

accuser have the right to be represented at this hearing by a member in good standing.  The Association shall provide the Arbitrator will all materials from prior hearings, as well as an electronic copy of past Article VII filings, transcripts, and awards.  *(09/23/2009)*

4.      The fees and expenses associated with the arbitration shall be the responsibility of the Association, unless the Arbitrator determines that a party to the proceeding has acted in bad faith in the prosecution or defense of these charges, in which case the Arbitrator shall have the authority to impose some or all of the costs and fees associated with the Article VII proceedings on the offending party.  *(09/23/2009)*

## ARTICLE VIII          EXPENSES

Normal expenses incurred by any officer, representative, or member while on APA business shall be reimbursed by the APA, provided, however, that authorization from the President or his designated representative is first obtained.  Allowable expenses shall include transportation, lodging, verified flight pay lost, meal expenses, and incidentals, conforming with the expense policy of the APA as set forth by the Board of Directors.

## ARTICLE IX      BONDING AND INDEMNIFICATION

### Section 1.      Bonding

All officers of the Association shall be bonded in amounts not less than those provided for and required by appropriate Federal statute.

### Section 2.      Indemnification

The Allied Pilots Association shall indemnify and hold harmless, to the extent permitted by law, the members of the Board of Directors, National Officers, committees, and staff as well as other members authorized by the Association to act on its behalf, against all liabilities, costs and expenses, including attorneys fees actually and reasonably incurred by him or her, in connection with any threatened, pending, or completed legal action or judicial or administrative proceeding to which he or she may be a party, or may be threatened to be made a party, by reason of his or her actions or omissions within the scope of his or her authorized duties on behalf of the Association, except with regard to any matters as to which he or she shall be adjudged in such action or proceeding to be liable for gross negligence, willful misconduct, or criminal conduct in connection therewith.  It is the expressed intent of the Association that the indemnity provided for in this Section is an indemnity extended by the Association, as indemnitor, to indemnify and protect those being indemnified from the consequences of their own negligence.  The Association may provide such indemnification through the purchase of insurance, or any other means, as the Association deems appropriate.  The Association reserves the right to select counsel in connection with any action, actual or threatened, for any person who is provided indemnification pursuant to this provision.  With respect to the benefit programs maintained by the Association, the Association shall maintain adequate bonding and liability insurance coverage for the Association and those authorized to act on its behalf in amounts either required by law or deemed appropriate by the Association.  *(09/12/2000)*

## ARTICLE X      CONFLICTS OF INTEREST

A.   Summary: The purpose of this statement is to assist the Allied Pilots Association and all of its related operations in identifying, disclosing, and resolving real and potential conflicts of interest.

B.   Scope: The following statement applies to all members of the Association and its elected National and Domicile Officers, National Committee Members, and Staff, all of whom shall hereafter be referred to as "the National Officers, Board of Directors (BOD), National Committee Members, and Staff."

C.   Fiduciary Responsibility: The National Officers, BOD and Staff who serve the Allied Pilots Association have a clear obligation to conduct all affairs of the Association in a forthright and honest manner.  Each person should make necessary decisions using good judgment and ethical and moral considerations consistent with the Code of Ethics stated in the APA Constitution and Bylaws (C&B), Appendix A.  All decisions of the National Officers, BOD, National Committee Members and Staff are to be made solely on the basis of a desire to promote the best interests of the Association and membership.

D.   Statement:  The National Officers, BOD, National Committee Members and Staff agree in their dealings with the Association to place the welfare of the Association and membership above personal interests, business interests, interests of family members, or others who may be personally involved in substantial affairs affecting the Association's basic functions.

E.   Specific Disclosure:  The National Officers, BOD, National Committee Members and Staff shall disclose by submitting a Conflict of Interest Disclosure Form set forth in C&B Appendix B (1) which fully discloses the precise nature of their interest or involvement when participating in any transactions for the Association which another party to the transaction includes:

   1.   Himself or herself; or

   2.   A member of the family (spouse, parents, brothers, sisters, children, and any other immediate relatives); or

   3.   An organization with which the member of the National Officers, BOD, National Committee Members and Staff or his family, is affiliated.

   Disclosure of said interest shall be made within five (5) business days of the first knowledge of the potential transaction.

F.   General Disclosure: The National Officers, BOD, National Committee Members and Staff shall disclose by submitting a Conflict of Interest Disclosure Form set forth in C&B Appendix B (1) disclosing all relationships and business affiliations which may now, or in the future, potentially conflict with the interest of the Association or bring personal gain to them, their family, or their business.  While it is not practical to list all situations that might lead to a conflict of interest, disclosure of said relationship or affiliation must be made if any member of the National Officers, BOD, National Committee Members and Staff or members of their family:

   1.   Is an officer, director, partner, employee, or agent of an organization with which the Association has business dealings; or

2.      Is either the actual or beneficial owner of more than one percent of the voting stock or controlling interest of an organization with which the Association has business dealings; or

3.      Is a consultant for such an organization; or

4.      Has any other direct or indirect dealings with an individual or organization from which he or she materially benefited (e.g., through the receipt directly or indirectly of cash, gifts, or other property).

5.      Accepts commissions, a share of profits or other payments, loans (other than with established banking or financial institutions at prevailing market rates), services, preferential treatment, entertainment or travel, or gifts from any individual or organization doing or seeking to do business with APA valued at greater than $100 retail.

6.      Buys, sells or leases, whether directly or indirectly, through another company, firm or individual, any kind of property, facilities, or equipment from or to APA.

G.      Reporting of Disclosures: All disclosures by Staff will be handled by the Association Secretary-Treasurer and will be held in confidence, except when the Association's best interests would be served by bringing the information to the attention of the National Officers and BOD.  All disclosures of the National Officers, BOD and National Committee Members shall be handled by the Secretary-Treasurer and maintained in a file, which can be inspected by any member of the Association.

H.      Restraint of Participation: The National Officers, BOD, National Committee Members and Staff who have a conflict of interest, real or potential, in any manner shall refrain from participating in the execution of any agreement, contract or verbal binding of the Association and shall refrain from voting on such matters.  National Officers shall execute an Agenda Disclosure Statement found in C&B Appendix B2 prior to any agenda item that represents a real or potential conflict of interest.

I.      Determination of Possible Conflict of Interest: Any individual who is uncertain about a conflict of interest in any manner shall disclose such possible conflict top the appropriate reporting individual, as noted above, using the Conflict of Interest Disclosure Form found in C&B Appendix B1, noting the potential conflict and any other information which the individual feels would assist APA Legal in determining if a conflict of interest exists.   The Secretary-Treasurer shall notify APA Legal immediately of all disclosures.  After the Disclosure Form has been executed, the individual shall be entitled to act as though no conflict of interest exists unless APA Legal notifies him or her otherwise in writing.

J.      When to Disclose Conflicts of Interest: Each member shall execute a Conflict of Interest Disclosure Form as set forth in C&B Appendix B1 in order to qualify as a candidate for National Officer, Domicile Officer or when nominated for any national committee and before assuming any duties of that office or committee.  Staff members shall execute a Conflict of Interest Disclosure Form as set forth in C&B Appendix B1 when applying for employment.  The form shall be maintained by the Secretary-Treasurer for the entire term of office/employment and will be destroyed upon completion of term in office or termination of employment with the Association.  If a potential conflict of interest arises subsequent to the submission of the original form, the National Officers, BOD, National Committee Member or Staff member shall complete a Conflict of Interest Form as set forth in C&B Appendix B1 within five (5) business days of becoming aware of the conflict.

K.    Failure to Disclose:  Each National Officer, BOD, National Committee Member and Staff member who executes a Disclosure Form recognizes that such filing is a requirement for continued affiliation or employment with the Association, and further, that a knowing failure to disclosure a potential conflict of interest could result in Article VII proceedings or discipline / termination of the employee and become subject to appropriate legal action to recover/return any item obtained in conflict with this policy.

## ARTICLE XI     COMMITTEES

A.    The President, subject to the advice and consent of the Board of Directors, shall appoint members to the standing committees established by the Board of Directors, except for standing committees that the Board of Directors has reserved the right to elect. The committee member appointed by the President shall be made from a list of members in good standing, submitted by current members of the Board of Directors. *(05/23/2005)*

B.    Each committee member appointed by the President shall submit a Conflict of Interest Disclosure Form (C&B Appendix B1) to the Secretary-Treasurer and be subject to a vote of approval by the Board of Directors at the next regular Board meeting following the appointment.  A simple majority vote shall be required for approval or rejection.  The President may appoint ad hoc committees as necessary to handle special projects.  These ad hoc committees shall not be standing committees, shall remain in effect for not longer than one (1) year, shall be appointed from a list of members in good standing, submitted by current members of the Board, shall submit a Conflict of Interest Disclosure Form (C&B Appendix B1) to the Secretary-Treasurer and shall be subject to Board approval and recall. *(05/23/2005)*

C.    The term in office for standing and ad hoc committee members, except those standing committees that the Board of Directors has reserved the right to elect, will expire with each election of the Association's President. *(05/23/2005)*

D.    The President, as appointing authority, has the power to remove or replace any committee member, except for the committees that the Board of Directors has reserved the right to elect. *(05/23/2005)*

E.    Any member appointed or elected to any committee shall submit a Conflict of Interest Disclosure Form (C&B Appendix B1) to the Secretary-Treasurer prior to Board approval.  Any member appointed or elected to any committee shall be subject to recall with or without cause by the Board of Directors.  A simple majority vote of the Board of Directors shall constitute a recall. *(05/23/2005)*

## ARTICLE XII     NEGOTIATIONS AND AGREEMENTS

A.    During negotiations having the purpose, intent, or effect of amending, modifying, or extending the Collective Bargaining Agreement, at least two (2) elected members of the APA Negotiating Committee shall be present at all meetings with any member of the Company's Negotiating Committee.  This policy shall be adhered to without exception by the National Officers and Negotiating Committee at all times.  At the first joint session of any negotiation or mediation or super-mediation, the President of the APA or the Chairman of the APA Negotiating Committee shall notify management's negotiating committee and the National Mediation Board representative, if applicable of this policy, and that there can be no exceptions to it for any reason. *(09/29/2000)*

B.  No National Officer, Board member or Committee member shall conduct conferences or negotiations having the purpose, intent or effect of amending, modifying or extending the collective bargaining agreement, with any party, without full disclosure of the existence of such conferences or negotiations to the Board of Directors and membership. If conferences or negotiations are to be held and the subject matter is of a confidential competitive nature, then the Board of Directors and membership shall be so notified. *(09/29/2000)*

C.  Conferences or negotiations shall not be initiated or carried on or concluded in the name of the Association by any member or any group of members thereof to make or establish basic collective bargaining agreement or other agreements without the prior approval of the President or the Board of Directors. *(01/23/92)*

D.  Basic collective bargaining agreements and agreements of affiliation or merger with other labor organizations shall be submitted to the Board of Directors for review. After reviewing the agreement, the Board of Directors shall vote to approve or reject the agreement. Only agreements approved by the Board of Directors by a majority vote, both one-man, one-vote and roll call vote shall be forwarded to the affected membership for a ratification vote. *(06/04/98)*

E.  The Board of Directors shall determine the date the ratification ballots will be distributed to all active affected members in good standing. Active members in good standing may vote for or against ratification of the agreement and shall return their ballots postmarked not later than fourteen (14) days following the date of ballot distribution. In order to bind the Association, the agreement shall be ratified by a majority vote of the participating members. The membership shall be notified immediately of the results. *(01/23/92)*

F.  In order to bind the Association, amendments to the basic collective bargaining agreements relative to pay, benefits or work rules, scope, successorship, and any agreements involving seniority list integration shall be ratified by the Board of Directors. *(02/16/2001)*

G.  No agreement shall become effective until it bears the signature of the President of the Association or other Association Officers authorized to sign by the Board of Directors. (01/23/92)

H.  Nothing in this Article XII shall prohibit APA from accepting a proffer of binding arbitration under the provisions of the Railway Labor Act. Acceptance of a proffer of binding arbitration must be approved in advance by the Board of Directors by a majority vote, both one-man, one-vote and roll call vote. (3/7/2012)

## ARTICLE XIII      AMENDMENTS

A.  The Constitution and Bylaws may be altered, amended, or added to by an affirmative two-thirds (2/3) vote of the Board of Directors.

B.  Any alteration, amendment, or addition to the Constitution and Bylaws shall not become effective after the two-thirds (2/3) affirmation referred to above, for one hundred (100) days after the completed vote has transpired.

If, during such one hundred (100) day abeyance period, thirty percent (30%) of the active membership petitions the Secretary-Treasurer requesting a referendum of the subject alteration, amendment, or addition, the Secretary-Treasurer shall circulate such a referendum ballot to the active membership.  The ballot shall contain the proposal to be voted on and shall state a reasonable deadline for the return of the ballots.  *(09/23/64)*

C.      Amendments to Election or Recall Procedures for National and Domicile Officers passed by an affirmative vote of a two thirds (2/3) majority of the Board of Directors will be subject to approval by the membership by way of a referendum ballot.

D.      The Board of Directors may also, at their discretion, direct other amendments to the Constitution and Bylaws be sent to members in good standing for approval by referendum by a two thirds (2/3) vote of the Board. *(04/24/2014)*

        1.      The Secretary-Treasurer shall, within thirty (30) days, circulate such ballots to the active membership. The ballot shall contain the proposition to be voted on and shall state a reasonable deadline for the return of the ballots. *(04/24/2014)*

        2.      An affirmative vote of a majority of the active members casting ballots shall be required for passage of the referendum.  Upon approval, the 100 day abeyance period from Article XIII B. shall be waived and the amendment will become effective immediately or on the date stated in the amendment in question. *(04/24/2014)*

E.      The Constitution and Bylaws may also be altered, amended, or added to in the following manner:

        1.      Thirty percent (30%) of the active members in good standing may petition the Secretary-Treasurer requesting a referendum ballot for altering, amending, or adding to the Constitution and Bylaws.  All such petitions must bear a signature date no earlier than one hundred and twenty (120) days prior to submission to the Secretary-Treasurer.  The Secretary-Treasurer shall, within thirty (30) days, circulate such ballots to the active membership.  The ballot shall contain the proposition to be voted on and shall state a reasonable deadline for the return of the ballots.  *(10/31/75)*

        2.      Any referendum petitions submitted to the Secretary-Treasurer by virtue of this Section 4 shall contain the petitioner's name printed in block letters, his signature, seniority number, domicile, and date of that signature.  *(10/31/75)*

        3.      An affirmative vote of two-thirds of the active members casting ballots shall be required for passage of the referendum ballot. *(04/23/14)*

## APPENDIX A
## CODE OF ETHICS
*(02/16/2001)*

<<<<<<<<<<<<<<>>>>>>>>>>>>>>

**APA's NATIONAL OFFICERS, DOMICILE OFFICERS, STAFF, CONSULTANTS AND NATIONAL COMMITTEES**

I will faithfully discharge the duty I owe the Association, which makes possible my way of life.

I will respect other officers, committee members, and employees of the Association remembering that respect does not entail subservience.

I will do all within my powers to discharge my duties efficiently and in a manner that will not cause unnecessary delays or expense.

I will faithfully adhere to the policies, directives, and resolutions of the Board of Directors.

I will realize that as a representative of the Association, I will at all times keep my personal appearance and conduct above reproach.

I will direct any criticism or proposed changes to the proper authorities within the Association.

I will hold the Association's business secrets in confidence, and will take care that they are not improperly revealed.

In dealing with others I will expect efficient performance, yet I will overlook small discrepancies and refrain from unnecessary and destructive criticism.

I will conduct my affairs with the Association in such a manner as to bring credit to the Association and to myself.

I will conduct my affairs with the Association and its members in accordance with the rules laid down in the Constitution and Bylaws of the Association and the interpretations promulgated there from.

I shall refrain from taking advantage of the confidence reposed in me by my fellow members.  If I am called upon to represent the Association in any dispute, I will do so to the best of my ability, fairly and fearlessly, relying on the influence and power of the Association to protect me.

I will regard myself as a debtor to the Association and will dedicate myself to its advancement.

I will not publish articles, give interviews, or permit my name to be used in any manner likely to bring discredit to the Association.

I will continue to keep abreast of labor developments so that my skill and judgment, which heavily depend on such knowledge, may be of the highest order.

I will endeavor to my utmost to faithfully fulfill the obligations of the Allied Pilots Association Code of Ethics.

Ethics are not learned by teaching; they are inculcated by example and by experience.  To a man of honor, ethics come as naturally as good table manners.



There are many rights guaranteed by the United States Government through the Labor Department and other government agencies.  The <u>Labor Management Reporting and Disclosure Act of 1989, As Amended</u> provides a wealth of information regarding your fundamental rights as a union member.  To obtain a copy of this Act, you may write to:

U.S. Department of Labor
Office of Labor-Management Standards
Washington, DC  20210

or you can request it by telephone.  Offices are located in many major cities throughout the United States and are listed under United States Government, Labor Department, and Office of Labor-Management Standards. *(09/20/89)*

**APPENDIX (B1)**
**Conflict of Interest Disclosure Form**
*(11/20/2003)*


**Conflict of Interest Disclosure Form**


**TO:**     **Allied Pilots Association Secretary-Treasurer**


*I have received and read the Conflict of Interest statement as set forth in Article I, Section 4 of the Constitution and Bylaws and to the best of my knowledge and information, I am in compliance with the provision except as specifically set forth below.   If my status should ever change, I will advise the Secretary-Treasurer and complete an additional Disclosure Form within five (5) business days.* (Check one)


*I have no conflict of interest as set forth in Article X, G. of the Constitution and Bylaws.*


*I am involved in a potential or actual conflict of interest as defined in Article X, G. of the Constitution and Bylaws as set forth below:*


Signature     _____     Employee Number     _____
Printed Name     _____     Date     _____

APP 043

**APPENDIX (B2)**
**Agenda Disclosure Statement**
*(11/20/2003)*

**Agenda Disclosure Statement**

| LAST NAME, FIRST NAME, MIDDLE INITIAL | DOMICILE OR OFFICE |
|---|---|
| **AGENDA ITEM NUMBER** | **DATE** |

This form is for any National Officer, Domicile Officer, Duly Designated Representative (DDR), or Proxy (Officer) who has a real or potential conflict of interest with an agenda item.

Each Officer MUST ABSTAIN from voting on a measure that inures to his special private gain.  (C&B Article XI, E.1.)

Each Officer is also prohibited from knowingly voting on a measure that inures to the special gain of a member of the family (spouse, parents, brothers, sisters, children, and any other immediate relatives).  (C&B Article XI, E.2.)

Each Officer is also prohibited from knowing by voting on a measure that inures to the special gain of an organization of which he is affiliated.  (C&B Article XI, E3)

In any of the above cases, you should disclose the conflict prior to the announcement of the agenda item.  The conflict of interest must be disclosed by completing this form and submitting it to the Secretary-Treasurer for inclusion in the meeting minutes.  (C&B Article XI, G.)

# INDEX

Agenda Disclosure Statement, 34
AMENDMENT DATES, ii
Amendments, 30
Application and Approval for Active
Membership, 8
ARTICLE I - - GENERAL, 3
ARTICLE II  OBJECTIVES AND RIGHTS
OF APA, 6
ARTICLE III - - MEMBERSHIP, 7
ARTICLE IV   NATIONAL OFFICERS, 12
ARTICLE IX  EXPENSES, 25
ARTICLE V  BOARD OF DIRECTORS, 17
ARTICLE VI   DOMICILES, 18
ARTICLE VII  HEARING AND
DISCIPLINARY PROCEDURES, 22
ARTICLE X  BONDING AND
INDEMNIFICATION, 25
ARTICLE XI  CONFLICTS OF INTEREST,
26
ARTICLE XII - - COMMITTEES, 28
ARTICLE XIII - - NEGOTIATIONS AND
AGREEMENTS, 29
ARTICLE XIV  AMENDMENTS, 30
Board of Directors, 17
Classes of Membership, 7
CODE OF ETHICS, 31
Conflict of Interest Disclosure Form, 33
Domicile Nominations and Elections, 18
Dues, 9

Duration, 3
Duties of Domicile Officers, 21
Election Appeals, 14, 21
Eligibility, 12
Executive Officers, 26
Fiscal Year, 4
Home Office Location, 3
Lump Sum Dispute Resolution Procedure, 12
Lump Sum Payment, 12
Membership Credentials, 8
Membership Rights and Obligations, 11
Membership Status, 9
Name, 3
National Office Election Procedures, 13
Nominations for National Office, 13
OBJECTIVES AND RIGHTS OF APA, 6
Obligations of Members, 12
Officers Defined, 12
Parliamentary Law and Rules of Order, 4
PREAMBLE, ii
President, 15
Qualifications, 7
Schedule of Domicile Elections, Terms of
Office, and Vacancies, 20
Secretary-Treasurer, 16
TABLE OF CONTENTS, 2
Terms of National Office and Vacancies, 14
Vice President, 15

# Exhibit B

# POLICY MANUAL



HOME OFFICE
14600 Trinity Blvd., Suite 500
Ft. Worth, TX  76155-2512
817-302-2272

Revision #163, October 23, 2015

**3.03   Domicile Officer Election Ballots**

    A.  Use of an electronic voting system is authorized for Domicile Officer Elections.  Paper-ballot voting is authorized for an election only if specifically directed by the APA Board of Directors.  APA shall use a reputable vendor chosen by the APA Secretary-Treasurer, in consultation with General Counsel and APA's Election Administrator, and approved by the APA Board of Directors. *(10/07/2013)*

**3.04   Voting at Domicile Meetings**

    A.  Voting on matters presented at a domicile meeting shall be restricted to active members in good standing currently occupying a bid status at that domicile.  *(02/07/93)*

    B.  Any member in good standing may speak at any domicile meeting, after being recognized by the Chair. *(02/07/2004)*

    C.  A quorum shall consist of those members present at a domicile meeting. *(01/24/96)*

**3.05   Domicile Meeting Structure**

    A.  All domicile meetings shall be conducted as a local assembly of an organized society. *(02/07/93)*

    B.  A quorum shall consist of those members present at a domicile meeting.  *(01/24/96)*

**3.06   Internet Services**

The Chairman at each domicile shall have full and complete authority to manage the services offered via the APA Internet Services for that domicile.  Each Domicile Vice Chairman shall have unrestricted ability to communicate with his domicile via the APA domicile Web site. *(11/10/2000)*

## 4.   COMMITTEES

**4.01   National Committees**

    A.  The following National Committees are established.   All National Committees, in conformance with Board directives and policy, will assist the President in administering the business of the Association.  All National Committees shall have a Chairman, and may have one or more Deputy Chairman. *(09/16/2010)* Appointments to committees shall be made by the President from a list submitted by the Board of Directors in accordance with Article XI, Section A of the Constitution and Bylaws.  This list will be composed only from names submitted by an incumbent Chairman or Vice Chairman.  Each Chairman and Vice Chairman shall submit the names of members from his Domicile only.  The incumbent Chairmen and Vice Chairmen shall review and approve the names of all members from their Domicile on the list at each regularly scheduled Board of Directors meeting.   A current list will be